O'Connor v. Walter.

————————    •

37    267
39    691

## PATRICK W. O'CONNOR v. FRED WALTER.

FILED JUNE 29, 1893.    No. 5082.

1. **Exemptions:** LABORERS' WAGES: GARNISHMENT: CONFLICT OF LAWS. Where there were due a resident of Nebraska from a railroad company operating a line of railroad through Iowa and Nebraska, wages, which, in Nebraska, were exempt from execution and attachment process, but which nevertheless, by means of an assignment of the claim against the party entitled to such exemption, to a resident of Iowa, were procured, by the garnishment of said railroad company in Iowa, to be applied to the payment of said claim, the assignor of such claim is liable to such debtor for the amount so appropriated without his consent.

2. ———: ———: ———: ———: RES ADJUDICATA. As between said assignor and the party entitled to the benefits of such exemption in Nebraska the proceedings in Iowa were in no sense *res adjudicata*.

ERROR from the district court of Lancaster county. Tried below before CHAPMAN, J.

*Sawyer & Snell*, for plaintiff in error.

*A. G. Greenlee, contra.*

RYAN, C.

The petition of Fred Walter, plaintiff, alleged, as against Patrick W. O'Connor, as defendant, that for a long time prior to the 5th day of March, 1889, the said plaintiff was, and ever since had been, a married man, the head of a family, and a resident of Cass county, Nebraska, and that during the whole of said time the said plaintiff had lived with and provided for his family by day labor, in the employ of the Chicago, Burlington & Quincy Railroad Company, and that said plaintiff's sole income and means of support for himself and his family were the wages by plaintiff earned in said employment; that on March 5, 1889, one D. M. West filed a petition in the court of N. Schurz, a justice of the peace in the city of Council Bluffs, Iowa, claiming to be the assignee of said O'Connor of a claim against plaintiff for the sum of $13.50 and costs; that said West caused the Chicago, Burlington & Quincy Railroad Company to be garnished, and requiring said railroad company to answer as to the indebtedness of the said company to plaintiff; that on March 11, 1889, the said railroad company accordingly answered that it was indebted to said Walter in the sum of $55, whereupon said cause was continued and service was obtained by publication upon Walter, and the day for hearing was set for May 10, 1889; that in April, 1889, the said railroad company filed an affidavit of the said Walter that he was the head of a family, and that his wages were exempt from execution, and asking that said proceedings be dissolved; that nevertheless the said justice of the peace entered judgment

O'Connor v. Walter.

against plaintiff Walter for the sum of $13.50 damages and costs taxed at $8.60, and requiring said railroad company to pay into court the sum of $22.10 out of plaintiff's wages, which said railroad company thereupon did; and that said $22.10 was deducted by said railroad company from the sum of $55 due plaintiff, and that plaintiff has never received said sum so deducted; that said sum of $55 was due plaintiff for labor performed as a brakeman by plaintiff for said railroad company within the sixty days immediately preceding said date of garnishment, and that the wages so garnished were exempt from seizure by attachment, execution, or garnishee process in this state, which facts the said West and O'Connor also well knew; that said West was not the owner of the account of the said O'Connor (if any such he had), but held it simply for collection for O'Connor, who was the real party in interest, though a pretended assignment thereof had been made by O'Connor to said West. For a second cause of action plaintiff claimed to be entitled to $27.50 as damages indirectly resulting from said garnishment, which he alleged was simply a conspiracy between West and O'Connor to deprive plaintiff of his exemptions under the laws of Nebraska. There was an answer in denial of each of the above averments.

The allegations of the petition are set out at great length and with considerable particularity, for the reason that with the exception of the averments in respect to the second cause of action, each allegation of said petition was upon the trial fully sustained by the proofs. These allegations, therefore, fairly state the facts in this case, wherefore it is needless that they be repeated. It was stipulated between the parties in the district court that by the laws of the state of Iowa the wages of a non-resident of that state are not exempt from attachment, execution, or garnishment. Upon a trial of the issues the jury returned a verdict in favor of Walter, against Patrick W. O'Connor,

for $24.50, for which, with costs, judgment was duly rendered. For the reversal of this judgment O'Connor brings this cause to this court by his petition in error, with the necessary record and bill of exceptions.

In *Albrecht v. Treitschke,* 17 Neb., 205, this court held that " where a judgment creditor procures the exempt wages due to a laborer to be taken by garnishee process and applied to the payment of his judgment, a cause of action arises in favor of the judgment debtor against the creditor for the amount of such wages wrongfully appropriated, unless the right of exemption is waived by the debtor." The statute exempting from seizure by judicial process such earnings of a laboring man as have accrued within the period of sixty days immediately preceding service of garnishment process was intended for the support of the family of which such laborer is the head and stay. In extending credit, every one dealing with the head of a family must take into account this right of exemption, and presumably in every extension of credit this right is recognized. It therefore in no way operates to the injury of the law-abiding creditor. The rapacity which respects neither implied contract obligations nor statutory enactments must, in damages, respond for this, as for any other act of misappropriation.

From the facts which we have under consideration it appears that O'Connor assigned his claim to West solely for the purpose of collection. In his evidence O'Connor admitted this, at the same time stating that the arrangement was that West was to receive for making the collection twenty per cent of the amount thereof. It is true the court in which suit was brought by West had jurisdiction of the garnishee, which operated its line of railroad as well in Iowa as Nebraska, and that therefore the amount was lost to Walter beyond recovery as against the garnishee. (*Chicago, B. & Q. R. Co. v. Moore,* 31 Neb., 629.) But why should this operate in favor of O'Connor who was the

O'Connor v. Walter.

prime mover in this garnishment proceeding? In all respects the deprivation of this exemption was as harsh and effectual as in the case of *Albrecht v. Treitschke, supra.* Let us suppose the exemption was of a specific article of personal property. It would be unquestioned that if he appropriated it to his own use in this state, O'Connor would be liable to Walter for its value. Instead of its being appropriated in this state, let us suppose that this property was found and appropriated by O'Connor in Iowa, would his liability for its value in the courts of Nebraska be in any way modified by that fact? Would it at all relieve of liability for him to show that his duly authorized agent in Iowa converted the property to the use of O'Connor? Certainly not, and there is no appreciable difference in principle between the cases supposed and that at bar. If the judgment creditor, directly or indirectly, no matter where or by what process, appropriates to the payment of a debt due him the exempt wages of the debtor, without such debtor's consent, such creditor is liable to the debtor entitled to such exemption to the full amount of the misappropriation. In this case, however, it was urged that the judgment of the Iowa court was *res adjudicata*, and therefore unassailable. An estoppel of that, as well as of any other nature, requires mutuality between the parties to render it effective. If O'Connor is entitled to the benefit of the judgment pleaded, it must appear that a judgment against him would have been likewise binding. This could not have been, for, purposely, he was not a party to the Iowa proceeding in any way. Under the proofs, no other verdict could properly have been returned than that which was rendered, and the judgment of the district court is

AFFIRMED.

THE other commissioners concur.