## JOHN S. BISHOP V. WILLIAM MIDDLETON ET AL.

FILED DECEMBER 4, 1894.    NO. 5612.

1. **Pleading.** It is unnecessary to plead what the law presumes. Therefore a pleading which avers facts from which the law presumes another fact sufficiently pleads that other fact.

2. **Practice in Supreme Court.** Assignments of error not specifically called to the attention of the court by brief or argument will be deemed waived, although a party in his brief states generally that he does not desire to waive any assignment.

3. **Exemptions:** LABORERS' WAGES. The decision in *Singer Mfg. Co. v. Fleming*, 39 Neb., 679, in regard to the validity of the act to provide for the better protection of the earnings of laborers, servants, and other employes of corporations, firms, and individuals engaged in interstate business (secs. 531c–531f, Code of Civil Procedure) followed and reaffirmed.

4. ——: ——. ·The term in the title of that act, "corporations engaged in interstate business," construed with reference to the object of the act, means a corporation doing business and employing men in this state, and having in another state such a *situs* as to permit of its being reached by process of garnishment there.

5. ——: ——. The act referred to applies to a case where the debt was incurred before the passage of the act, and was assigned in good faith to a third person after its passage, but where such third person thereafter again assigned it for the purpose of evading the exemption laws of this state.

6. ——: ——. An assignment for the purpose of evading the effect of our exemption laws was unlawful before as well as after the passage of the act, and the act affects only the remedy. Its application to the case of debts incurred prior to its passage does not, therefore, impair the obligations of contracts.

7. ——: ——. Evidence examined, and *held* sufficient to sustain the verdict.

ERROR from the district court of Lancaster county. Tried below before TIBBETS, J.

See opinion for statement of the case.

*John S. Bishop*, for plaintiff in error:

The account was sold in Iowa. To support this action the act must have been wrongful or punishable in Iowa, where it took place. Whatever would be a good defense to the action if brought there, must be a good defense here and everywhere. (Cooley, Torts [2d ed.], 552; Bishop, Non-Contract Law, secs. 1280, 1281.)

The act of 1889 can only be applied to contracts made since its passage. Laws are construed to be prospective and not retrospective, unless their language imperatively requires such a construction. (*Auffm'ordt v. Rasin*, 102 U. S., 620.)

The act of 1889 is unconstitutional. The subject is not clearly expressed in its title. The subject-matter of the act as expressed in the title is the protection of wages of persons employed by corporations doing an interstate business, while in the body of the act its operation is not so restricted. The act provides a penalty and defines a crime which are not expressed in its title. The title of an act must express the subject of the bill. (Constitution of Nebraska, sec. 11, art. 3; *Ives v. Norris*, 13 Neb., 252.)

The subject-matter of the act is unconstitutional. It extends the criminal and penal laws of Nebraska over Iowa, and makes the selling of an account in Iowa unlawful, which by the laws of Iowa is lawful. (*Burlington & M. R. R. Co. v. Thompson*, 31 Kan., 180; *Slack v. Gibbs*, 14 Vt., 364.) It impairs the obligation of a contract right possessed in the account the subject of the original suit. The value of the account has been diminished by legislation. (*Oatman v. Bond*, 15 Wis., 22; *Homestead Cases*, 12 Am. Rep. [Va.], 515; *Planters Bank v. Sharp*, 6 How. [U. S.], 301; *Green v. Biddle*, 8 Wheat. [U. S.], 1; *Commercial Bank v. State*, 4 Smedes & M. [Miss.], 507; *Rees v. Watertown*, 86 U. S., 107; *Memphis v. United States*, 97 U. S., 293.)

The Iowa judgment is conclusive, and estops Middleton,

who appeared personally in that action. (*Green v. Van Buskirk,* 7 Wall. [U. S.], 139; *Cole v. Cunningham,* 133 U. S., 107; *Uppinghouse v. Mundel,* 103 Ind., 238; *Morgan v. Neville,* 74 Pa. St., 53.)

*L. C. Burr,* also for plaintiff in error.

*W. P. Hall, Halleck F. Rose,* and *Adams & Scott, contra,* cited: *Albrecht v. Treitschke,* 17 Neb., 205; *Wright v. Chicago, B. & Q. R. Co.,* 19 Neb., 182; *Union P. R. Co. v. Smersh,* 22 Neb., 751; *Snyder v. Brune,* 22 Neb., 189.

IRVINE, C.

In 1888 Middleton was indebted to the defendant in error, Dr. Latta, in the sum of $91, for professional services. The plaintiff in error, Bishop, was an attorney at law, and in November, 1888, the account was placed in his hands for collection. The legislature of 1889 passed an act entitled "An act to provide for the better protection of the earnings of laborers, servants, and other employes of corporations, firms, or individuals engaged in interstate business." This act appears as sections 531c–531f, Code of Civil Procedure, and is quoted at large in the opinion in *Singer Mfg. Co. v. Fleming,* 39 Neb., 679. After this act took effect, and on November 11, 1889, Dr. Latta assigned this account to Bishop, who assigned it later to one West, an attorney at law practicing in Council Bluffs, Iowa. West assigned it to one Tucker, and as attorney for Tucker began suit in Iowa aided by attachment. Middleton was then employed by the Chicago, Burlington & Quincy Railroad Company, and was working at Holdrege, in this state. The railroad company was garnished and wages earned by Middleton within sixty days were seized and applied to the satisfaction of the judgment, which was finally rendered in the case by the Iowa court. Middleton was the head of a family, and there is no doubt that the wages so seized were

exempt under the laws of Nebraska; $114.78 was the sum so seized and applied to the payment of the judgment. Middleton then brought his suit against Bishop and Latta to recover back the sum so seized, together with his expenses, alleging that the assignment from Latta to Bishop was for the purpose of avoiding the law of Nebraska concerning exemptions. There was a trial to a jury and a verdict and judgment in favor of Middleton against Bishop for $103.74. The jury found in favor of the defendant Latta. There is no averment in the petition that the assignment from Bishop to West was for the purpose of avoiding the effect of the exemption laws of this state, but the petition avers that a suit was instituted in Iowa, that service of garnishment summons was made to seize exempt wages of Middleton, and under section 531$e$ of the Code of Civil Procedure, being section 3 of the act referred to, this constitutes *prima facie* evidence of an evasion of the laws of Nebraska, and the facts alleged raise a legal presumption of such evasion. It is not necessary to plead what the law presumes; and the facts being pleaded which raised this presumption, it was unnecessary to plead expressly the unlawful intent. To reverse the judgment so rendered against him Bishop prosecutes error.

Several assignments of error will not be noticed, for the reason that they are not referred to in the briefs, and must therefore be deemed waived. It is true that the plaintiff in error says in his brief that he does not wish to waive the assignments not noticed therein; but the reason of the rule whereunder such assignments are treated as waived is not merely an inference as to the intention of the plaintiff in error. This court has a right to require, and does require, not only that alleged errors shall be specifically assigned, but that counsel in argument, or in the briefs, shall point out in what respect the ruling complained of is erroneous. Where one assigns generally that there was error in a certain ruling he must by argument, orally or in his

brief, indicate wherein the error lies; and this court will not, in the absence of such indication, undertake to investigate and discover such error. Many of the points urged in argument have since the submission of this case been considered and decided in the case of *Singer Mfg. Co. v. Fleming, supra.* In fact it may be stated that this case presents every question presented in that except the one covered by the fifth point of the syllabus in the former case. It is unnecessary to restate or rediscuss these questions. The decision in *Singer Mfg. Co. v. Fleming,* so far as it is applicable here, is adhered to.

It is urged that the verdict is not sustained by the evidence, for the reason that there is no evidence tending to prove that the sale of the account by Bishop to West was for the purpose of avoiding the effect of the laws of this state, that there is no evidence that Bishop aided or counseled a violation of the act in question, or that he caused to be done any of the acts made *prima facie* evidence of an evasion of our law. The evidence does show that Bishop assigned the account to West; that West resided in Iowa, and was there practicing law; that West assigned to Tucker; that Tucker, through West as his attorney, began suit in Iowa aided by attachment; that the railroad company was garnished, and that the wages of Middleton, exempt under the laws of Nebraska, were seized by that process. Section 3 of the act in question provides that proof of the institution of a suit, or service of garnishment summons by any person, firm, or individual in any court of any state or territory, other than this state, or in this state, to seize by process of garnishment any of the wages of the persons defined in section 1 of the act shall be deemed *prima facie* evidence of an evasion of the laws of the state of Nebraska, and a breach of the provisions of the act on the part of the creditor or resident of Nebraska causing the same to be done. The evidence was, therefore, ample to make a *prima facie* case against Bishop, unless the act requires affirmative

proof that the resident of Nebraska caused the institution of the suit, and unless there is an absence of such proof. Bishop testified that he did not assign the account to West for the purpose of evading our laws, and that nothing was said in regard to the institution of any proceedings. But it appears that West was informed by Bishop of Middleton's employment. That the negotiations referred not to this claim alone but to others also. It does not appear that West knew Middleton or had any information as to his financial responsibility. Middleton resided at a distance. Bishop had for more than a year been endeavoring to collect the account in this state. From these facts, and from those already stated, we think the jury was justified in inferring that the assignment was with the contemplation of collecting the account by such proceedings, and for the purpose of evading the effect of our exemption laws. So that if it be necessary to show, in addition to the facts raising the presumption referred to in section 3, that the defendant caused the performance of any such acts, we think there was sufficient evidence to show that fact.

It is further urged that the verdict is contrary to the evidence because Bishop sold the account in Iowa. It was said in *Singer Mfg. Co. v. Fleming* that the gist of the action lies in the unlawful seizure of the debtor's property in this state; but it is not necessary to here decide whether liability could be evaded by the creditor's going to Iowa and there transferring the account. The evidence shows that the negotiations for the sale were begun in Council Bluffs, but that they were consummated by correspondence by mail between Bishop and West, Bishop then residing and being in Nebraska. His acts were committed here.

By one of the instructions the jury was told that in order that the plaintiff should recover the jury must find, among other things, that he was a laborer, servant, clerk, or other employe of a corporation, firm, or individual in

this state. It is claimed that this instruction was errone-
ous because the title of the act includes only employes of
corporations, firms, or individuals engaged in interstate
business. The instruction should have been so qualified in
order to be exact; but the uncontradicted evidence showed
that Middleton was an employe of a corporation in some
places designated as "The Chicago, Burlington & Quincy
Railroad Company," and in others as "The Burlington &
Missouri Railroad Company in Nebraska;" that the latter
company was originally incorporated to build and operate
a line of railroad whose termini were fixed within this
state, but that it was afterwards consolidated with the Chi-
cago, Burlington & Quincy Railroad Company, an Illinois
corporation which had become under the laws of Illinois
and Iowa the owner of the property and franchises of the
Burlington & Missouri Railroad Company of Iowa. The
articles of consolidation show that the railroads of the parties
thereto connected at the boundary line between Iowa and
Nebraska. This proof, together with the fact that Middle-
ton was employed by the company in Nebraska, and that
compulsory service of garnishment had been made upon
the company in Iowa, established clearly that the corpora-
tion was one doing an interstate business, and the inaccu-
racy in the instruction was therefore without prejudice.
We do not think that in order to make the act applicable it
is necessary to show that the corporation is one engaged in
commerce among the states within the meaning of those
cases construing the federal constitution. The act should
be construed with reference to its object. Its object was to
prevent the evasion of our exemption law by garnishment
of a corporation employing a man in this state, but having
such a *situs* in another state as to permit of its being reached
by legal process there. Undoubtedly this corporation fell
within that class.

It is next urged that because the debt sued on was in-
curred before the act of 1889 was passed, the application

of that act would operate to impair the obligations of a contract. In the first place the claim did not pass to Bishop until after the act of 1889 took effect. There was no legislation then which in anywise changed the relations of Bishop and Middleton after the assignment to Bishop. The act which forms the basis of this action was not the transfer from Latta to Bishop, but it was the transfer from Bishop to West which occurred after the statute took effect. The statute is not therefore given a retroactive effect by applying it to that transfer. But beyond this this act in no sense makes unlawful a contract which was before its passage lawful. Independent of the statute the institution of proceedings in evasion or in fraud of law is unlawful. It is admitted in the argument that a resident of Nebraska might by injunction be prevented from enforcing his demand in another state in violation of our law. This act merely provides a better and more adequate remedy against such proceedings. It is an act affecting the remedy alone, and not the contract. It is probably true, as counsel argue, that its passage rendered less valuable such claims as the present, but this is solely because of the former want of an adequate remedy on behalf of the debtor to prevent the creditor from enforcing his demand by unlawful means. Such a creditor cannot complain because the legislature has deprived him of the opportunity to adopt such unlawful means without incurring liability therefor. Judgment

AFFIRMED.