## ANDERSON *et al.* v. CANADAY.

No. 2748. Opinion Filed April 4, 1913.

(131 Pac. 697.)

1. **EXEMPTIONS—Evasion of Right—Action for Damages—Petition.**
A petition, which alleges that plaintiff and defendants are residents of Oklahoma, that plaintiff, by contract of employment made in this state, is working in this state for a railroad company, that plaintiff was indebted to one of the defendants, and that the other defendant was an attorney, and that the defendants conspired, combined, and confederated together for the purpose of defeating plaintiff's right to exemptions under the laws of Oklahoma, and for that purpose brought suit in another state into which the lines of the railroad company for which he works extends, and by garnishment proceedings collected wages earned within 60 days before the action was begun, states a cause of action for damages against both defendants.

2. **MALICIOUS PROSECUTIONS—Liability of Attorney.** Where an attorney is himself actuated by malicious motives in bringing an action or proceeding for his client, he is liable for damages for bringing such action or proceeding equally with his client.

3. **JUDGMENT—Foreign Judgment—Conclusiveness—Process.** Full faith and credit is not denied to the judgment of another state upon garnishment proceedings, requiring the garnishee to pay the wages

of the debtor to his creditor by allowing the defendant, where no personal service was obtained on him, to recover damages from his creditor for seizing his exempt wages.

4.   **EXEMPTIONS—Nature of Right.** The exemption laws are intended for the protection of families, to preserve them from want and make them independent.

5.   **SAME—Protection—Damages—Right of Action.** A resident debtor may recover damages against a person who has brought suit in a foreign jurisdiction to evade the exemption laws of Oklahoma, and who, in violation of such laws, has collected from the debtor a judgment obtained in such jurisdiction.

6.   **SAME—Wrongful Garnishment—Action—Estoppel.** Where a resident creditor, in order to evade the exemption laws of Oklahoma, brings an action in another state against a resident debtor, and through garnishment proceedings collects the judgment there obtained, the fact that the debtor fails to appear in the foreign jurisdiction and defend the suit will not estop him from recovering his damages for the violation of his exemption right.

(Syllabus by Rosser, C.)

*Error from District Court, Woodward County;*
*R. F. Loofbourrow, Judge.*

Action by Roy O. Canaday against A. W. Anderson and another. From judgment for plaintiff, the defendant named brings error. Affirmed.

*Chas. R. Alexander,* for plaintiff in error.
*A. M. Appelget,* for defendant in error.

Opinion by ROSSER, C. The only question involved in this case is the sufficiency of the petition. The petition alleges that the plaintiff is a married man, residing with his family in Woodward county, state of Oklahoma; that the defendants, J. W. Holmes and A. W. Anderson, also reside in that county; that during the months of January and February, 1908, plaintiff was employed by the Atchison, Topeka & Santa Fe Railway Company; that a line of that company's road extends into the state of Missouri; that it maintains offices in both Oklahoma and Missouri, and has officials in each state upon whom service of summons may lawfully be made; that plaintiff was a resident of the state of Oklahoma at the time he was em-

ployed by the railroad company, and that his contract of employment was made in said state; that all the labor he has performed by reason of such employment has been within the said state; that prior to the month of January, 1908, plaintiff was indebted to the defendant J. W. Holmes in the sum of $50, which indebtedness was incurred in the state of Oklahoma; that the defendant A. W. Anderson is an attorney, admitted and practicing in said state, and that the said defendants, J. W. Holmes and A. W. Anderson, combined and confederated together to defeat and defraud the rights of the plaintiff under the exemption laws of the state of Oklahoma by bringing an action in the state of Missouri upon the said indebtedness so owing by plaintiff to the defendant Holmes, and that they seized the wages due the plaintiff from said railroad company for the months of January and February, 1908, by garnishment proceedings; that the time said action was brought is not definitely known by the plaintiff, but it was about the 1st of March, 1908, and that the wages so taken by garnishment proceedings were earned by the plaintiff in his capacity as fireman for said railroad company within 60 days prior to the commencement of said action; that no service of summons was made personally upon the plaintiff, and if any service was made it was made by publication. This count of the petition prayed for a restraining order prohibiting the defendants from maintaining said action in the state of Missouri, or taking the wages due the plaintiff by garnishment process in the courts in the state of Missouri or the courts of any foreign jurisdiction. The second count of the petition adopts all the allegations of the first count, and alleges that the plaintiff has been damaged by reason of the garnishment, and prays judgment for damages. The trial court overruled the demurrer to the petition and rendered judgment against Anderson for the amount of plaintiff's wages. There was no service on Holmes. The evidence is not brought up, so it will be presumed that it sustains the allegations of the petition.

It is well settled that the courts of a state may enjoin one of its citizens from bringing a suit in a foreign jurisdiction against another of its citizens, for the purpose of preventing that other citizen from claiming exemptions to which he would be entitled under the law of the state of his residence. *Snooks v. Snelzer,* 25 Ohio St. 516; *Wierse v. Thomas,* 145 N. C. 261, 59 S. E. 58, 15 L. R. A. (N. S.) 1008, 122 Am. St. Rep. 446; *Greer v. Strozier,* 90 Ark. 158, 118 S. W. 400; *Greer v. Cook,* 88 Ark. 93, 113 S. W. 1009, 16 Ann. Cas. 671; *Griffilh v. Langsdale,* 53 Ark. 71, 13 S. W. 733, 22 Am. St. Rep. 182. It is difficult to understand upon what theory an injunction can be granted, unless it is because the act enjoined will result in wrong, and if it does result in wrong the law should give redress. It seems illogical to say to a citizen against whom an injunction is asked, "It is wrong for you to seize by garnishment process the wages of another citizen in a foreign state, and therefore you are enjoined from so doing," but if he does get the money by garnishment process to say to such person whose wages were taken, "If you had applied in time, an injunction would have been issued to prevent your creditor from getting your wages, but as he has collected them he may keep them."

The exemption laws are intended for the protection of the family, and embody the public policy of the state on the question. It seems clear that as between her citizens the state has the right to make her exemption laws effective, and ought not to deny to one of her citizens a remedy against another of her citizens, who has brought suit in a foreign jurisdiction for the purpose of evading her exemption laws, and of depriving the party sued of the protection which the law of the state of his residence gave him. Section 3346, Comp. Laws 1909, provides that:

"The following property shall be reserved to every family residing in the state exempt from attachment or execution and every other species of forced sale for the payment of debts, except as hereinafter provided. * * * Sixteenth, all current wages and earnings for personal or professional services earned within the last ninety days."

No other item in the list of exemptions is as important as the item of wages. The purpose of the exemption laws is to preserve families from want and to make them independent. When the wage-earner cannot collect his wages, he immediately becomes dependent on the kindness of others. He must immediately "go borrowing," and therefore "go sorrowing." Without means to provide for the daily wants of his family, he is forced to ask for additional credit at the very time when his credit is most impaired, or else to see his family suffer for lack of necessaries. The statute was intended to prevent this.

The question involved has been before the courts, and there is diversity of opinion among them. In the case of *Harwell v. Sharp,* 85 Ga. 124, 11 S. E. 561, 8 L. R. A. 514, 21 Am. St. Rep. 149, Judge Bleckly decided that the debtor had no cause of action against his creditor under such circumstances. He conceded, however, that the debtor might have had an injunction to restrain his creditors from proceeding in the foreign court. But, as already stated, it is difficult to give a reason why the action to recover the money should not lie, if an injunction could have been issued before it was collected. That opinion also seems to invoke the doctrine of waiver against the debtor. Judge Bleckly said the debtor "could not allow the law of Tennessee to be applied to the case and afterwards, by such an action as this, have the law of Georgia applied to it." It is not believed, though, that the courts of the state of both parties' residence should apply the doctrine of estoppel against one of its citizens, because he did not appear in a foreign jurisdiction to defend a suit brought for the very purpose of evading the law of the state of his residence.

The contrary rule has been laid down in Nebraska. It was held in *Albrecht v. Trieschke,* 17 Neb. 205, 22 N. W. 418, that where a creditor seized and collected exempt wages by garnishment proceedings were in a domestic court, but knowledge creditor, unless he had waived his right. In that case the garnishment proceedings was in a domestic court, but knowledge thereof was fraudulently kept from the debtor. In *O'Connor v.*

*Waller,* 37 Neb. 267, 55 N. W. 867, 23 L. R. A. 650, 40 Am. St. Rep. 486, it was held that where the creditor, by means of an assignment of his claim to a resident of another state, procured the collection of the wages of the debtor by means of a garnishment in the other state, he was liable to the debtor for the amount so collected. The same rule was laid down in *Bishop v. Middleton,* 43 Neb. 10, 61 N. W. 129, 26 L. R. A. 445. It is true these decisions were based on a statute which, in effect, gave a right of action against the creditor under such circumstances, but the statute was only declaratory of the policy of the state on the subject. It is believed that the policy of this state favors the fullest protection for exemptions. *Kestler v. Kern,* 2 Ind. App. 488, 28 N. E. 726, also holds that the debtor has a cause of action against the creditor under the same circumstances as exist in the present case. In that state the statute made it a misdemeanor for a creditor to send a claim against a resident of the state out of the state for collection against the debtor. In that case it was said:

"It would be a lasting reproach to our jurisprudence, armed as it is in its admirable combination, with all the powers and attributes of both law and equity, to hold that while a creditor may be enjoined from sending a claim into another jurisdiction for the purpose of evading our exemption laws, yet if he should do so successfully, without the knowledge of the debtor, or if the debtor, on account of his poverty, be unable to furnish the necessary undertaking for the restraining order, the law will afford him no redress. In many instances creditors could assign or transfer claims against our citizens to citizens of other states for the purpose of facilitating their collection before a restraining order could be obtained, and no order of injunction, after such assignment or transfer, could interfere with the nonresident assignee and prevent him from prosecuting proceedings in the tribunals of his own state. The 'strong arm of chancery' would afford very inadequate protection under such circumstances."

In the case of *Stark v. Bare,* 39 Kan. 100, 17 Pac. 826, 7 Am. St. Rep. 537, the court held that a creditor, who sent a claim out of the state in order to prevent the debtor from.

availing himself of the exemptions of the state of their residence, was liable to the debtor for whatever damages he might sustain. And the same rule was followed in *Stewart v. Thomson,* 97 Ky. 575, 31 S. W. 133, 36 L. R. A. 582, 53 Am. St. Rep. 431. The authorities are collected in a note to this case in 36 L. R. A., and the annotator approves the doctrine in vigorous language. Both abstract justice and sound legal principles give a cause of action under such circumstances. *Ill. Cent. R. Co. v. Smith,* 70 Miss. 344, 12 South. 461, 19 L. R. A. 577, 35 Am. St. Rep. 651; *Drake v. L. S. & M. S. R. Co.* 69 Mich. 168, 37 N. W. 70, 13 Am. St. Rep. 382.

It is contended, however, that though the creditor might be liable his attorney is not. An attorney is not ordinarily liable for the acts of his client. The fact that through ignorance he gives his client bad advice, on which he acts to the hurt of another, will not make the attorney liable to that other. But where the attorney is actuated by malicious motives or shares the illegal motives of his client he becomes responsible. · In the case of *Burnap v. Marsh,* 13 Ill. 535, Mr. Justice Caton said:

"It is not denied that, in order to render the attorneys liable for suing out a writ and causing the plaintiff to be arrested thereon, something more must be shown than would be required, were the action brought against the party in whose behalf the writ was sued out. The rule by which attorneys may be held liable for malicious prosecutions is clearly laid down by Tindal, C. J., in *Stockley v. Harnidge,* 34 Eng. C. L. R. 276. It was there held that if the attorneys who commenced the suit alleged to be malicious knew that there was no cause of action, and knowing this 'dishonesty and with some sinister view, for some purpose of their own, or for some other ill purpose which the law calls malicious, caused the plaintiff to be arrested and imprisoned,'· they were liable. To protect attorneys beyond this would be authorizing those who are the most capable of mischief to commit the grossest wrong and oppression. It is true that when the attorney acts in good faith in prosecuting a claim which his client believes to be just, and is actuated only by motives of fidelity to his trust, he ought not to be held liable, although he may have entertained a different opinion as to the

justice or legality of the claims. When the client will assume to dictate a prosecution upon his own responsibility, the attorney may well be justified in representing him, so long as he believes his client to be asserting what he supposes are his rights, and is not making use of him to justify his malice. But when an attorney submits to be made the instrument of prosecuting and imprisoning a party against whom he knows his client has no just claim or cause of arrest, and that the plaintiff is actuated by illegal or malicious motives, he is morally and legally just as much liable as if he were prompted by his own malice against the injured party. If he will knowingly sell himself to work out the malicious purposes of another, he is a partaker of that malice as much as if it originated in his own bosom."

In *Bicknell v. Dorin,* 16 Pick. (Mass.) 478, Justice Shaw said:

"Upon the other ground I am not prepared to say that if a person applies to an attorney and wishes to have a groundless suit commenced for the purpose of detaining the property or person of another under the form of legal process, and the attorney yields to such a request, that they would not render themselves liable to an action at the suit of the party thus injured. It would be very different from the case where the client requested an action to be brought on his responsibility, however groundless the attorney himself may think it to be, and though he explicitly declared to the client that he cannot maintain the action."

See, also, *Hoosac Tunnel D. & E. Co. v. O'Brien,* 137 Mass. 424, 50 Am. Rep. 323. In other words, the liability of the attorney depends on his state of mind. If he is actuated only by his duty as attorney, he is not liable; but if he shares the illegal purpose and intent of the client he is liable.

In the case of *Bishop v. Middleton,* 43 Neb. 10, 61 N. W. 129, 26 L. R. A. 445, Middleton was indebted to Latta. Latta placed the account in the hands of Bishop, an attorney at law, for collection. After the Nebraska act was passed which made the creditors liable for the collection of their debts out of exempted property through garnishment process in another state, Latta assigned the account to Bishop, and Bishop assigned it to an attorney in Iowa. The Iowa attorney assigned it to another person, who brought suit in the name of that other

person in the courts of Iowa and garnished Middleton's wages. The court held that Bishop was liable to Middleton for damages for wrongful seizure of his exempted wages.

The petition in this case alleges that Holmes and Anderson combined and confederated together, in order to defeat and defraud the rights of the plaintiff under the exemption laws of the state of Oklahoma, by bringing an action in the state of Missouri. It stated a cause of action.

It is urged that to allow the plaintiff in this case to recover would be to refuse full faith and credit to the judgment rendered in the state of Missouri. This contention cannot be maintained. No personal judgment was obtained against the plaintiff in Missouri. He was never served with process. He did not appear there. The judgment there would not be the basis for a cause of action in the state of Oklahoma.

No attack is made on the judgment in Missouri, so far as it purported to be valid; but there was no judgment against the plaintiff, because he was not served with process and was not before the court. There was no adjudication in that court binding upon him under any construction of the Constitution, except to the extent that his money was taken. The very purpose of bringing the suit was to prevent the defendant from claiming his rights. His rights were not adjudicated. *O'Connor v. Walter,* 37 Neb. 267, 55 N. W. 867, 23 L. R. A. 650, 40 Am. St. Rep. 486. There is no question of constitutional law in this case.

The judgment of the trial court should be affirmed.

By the Court: It is so ordered.