ly suggest the probable effect of such a situation.

The case nearest in point from our own court, or that has been discovered from any jurisdiction, is Hampton v. State, 98 Tex. Cr.R. 161, 265 S.W. 164. The accused was charged in three counts of negligent homicide of the second degree. Notwithstanding this, the trial court submitted to the jury and authorized Hampton's conviction of negligent homicide in the first or second degree. The jury convicted him of negligent homicide of the first degree, an offense not covered by, or contained in, the pleading of the State. Such conviction was by this court reversed (92 Tex.Cr.R. 441, 244 S.W.· 525, 526) because "there [was] no pleading justifying the submission of negligent homicide of the first degree." Thereafter, Hampton was put upon trial for the offense of negligent homicide of the second degree, as charged in the original information, and over his plea of jeopardy to the effect that he had been acquitted thereof. He was convicted. This court sustained Hampton's contention that he had been under the facts stated acquitted of negligent homicide of the second degree by the verdict of the jury in the first trial. Hampton's case was cited with approval in Gilliam v. State, supra.

In principle, I have been unable to distinguish that case from the one now before .us. In Hampton's case the court authorized conviction for an offense not charged in the State's pleadings. In the present case the court authorized a conviction upon a count which was fatally defective and which ought not to have been submitted to the jury at all, and doubtless would not have been had the defect in the first count been observed. The good count was also submitted exactly as was done in the Hampton case. Appellant was in danger— jeopardy—of conviction under said good count; and as said before, under proof of the primary offense and one prior felony conviction, subject to exactly the same punishment assessed under the bad count.

I have reached the conclusion that appellant's motion for rehearing should be granted, the judgment of affirmance set aside and the judgment of the trial court now reversed and the prosecution ordered dismissed.

My brethren have reached a different conclusion, and I respectfully record my dissent.

## HALLS CLOTHING CO. v. RAMIREZ.

### No. 4401.

Court of Civil Appeals of Texas. El Paso.

July 13, 1944.

Rehearing Denied Aug. 3, 1944.

Potash & Cameron, of El Paso, for appellant.

Fryer & Milstead, of El Paso, for appellee.

SUTTON, Justice.

This is an appeal from a judgment of the El Paso County Court at Law.

The case was originally tried in the Justice Court and appealed from a judgment of that court to the County Court at Law. The case was there tried de novo on written pleadings. Florencio Ramirez was the plaintiff in the trial court. He alleged in substance that both he and the defendant were at all relevant times residents of El Paso County, Texas; that the defendant is a retail clothing concern owned by one David Lerner, likewise a resident of El Paso County, and operated under the assumed name used above. He alleged he had bought clothing from the defendant on credit. On or about May 1, 1943, a bona fide dispute arose between plaintiff and defendant as to the amount due and owing on his account. He insisted he owed the sum of $13.15; the defendant claimed a

balance of $17.77. On or about the date above the plaintiff entered the employment of the Southern Pacific Railroad Company. Plaintiff then alleges the defendant made a simulated and fraudulent transfer and assignment of his account to Koepple's Collection Agency owned and operated by one Leland S. Kepler, under the designated trade or assumed name, in Orange County, California, for the purpose of evading the exemption laws of the State of Texas, whereby his current wages are exempt from garnishment and other similar process for the payment of his debts; that in a suit brought in the Justice Court of Orange County, California, styled H. Koepple, an individual doing business as Koepple's Collection Agency, v. Florencio Ramirez, Koepple procured a garnishment writ against the Southern Pacific Railroad Company and caused to be withheld by said Company from his current wages the sum of $47.60, being $17.70 principal, $10 attorney's fees, $6.23 interest, and $13.60 court costs. Plaintiff sought to recover his actual damages and $100 exemplary damages.

The defendant answered with numerous special exceptions, a general denial and a special answer wherein the account, the assignment thereof, the California judgment and applicable provisions of the California exemption laws were pleaded and the California judgment set up as res judicata of the controversy, etc. No questions are raised on the pleadings, and a fuller statement of them we deem unnecessary.

A trial was had to the court without a jury, and judgment was rendered in favor of the plaintiff for actual damages in the sum of $45.73, together with legal interest and costs of suit. From this judgment the defendant has appealed.

The court on request filed findings and conclusions. He found the indebtedness between plaintiff and defendant was originally evidenced by written purchase and sales contracts secured by an assignment of plaintiff's wages; that these were merged with a running open account; that at the time defendant assigned the written contracts to Koepple's the written contracts had been fully paid and nothing remained due thereon; that the assignment was simulated and not genuine and had for the purpose of evading the exemption laws of Texas, and that there was in fact due at the time of the assignment only $13.15 and not $17.77. (It was admitted by the de-

fendant the error existed and the correct amount due was only $13.15, which error was discovered and admitted prior to the time the California judgment was taken.)

The defendant has seven assignments of error or points. They all assert in one way or another the validity of the assignment; that the California judgment is final and res judicata of the controversy between plaintiff and defendant and the judgment entitled to full faith and credit, together with the further contention plaintiff's sole remedy was by injunction.

As we construe the testimony of Mr. W. R. Norton, defendant's manager who handled the entire transaction here involved, the assignment did not vest any right or interest to the debt in Koepple's, but was made for the sole purpose of the California suit and to evade the Texas exemption laws. Thus not only was the finding of the trial court justified, but compelled, that it was simulated and for that purpose. In this situation it is our opinion we need not concern ourselves with the validity of the California judgment, its finality, nor to the benefits it may be entitled to under the full faith and credit provisions of the National Constitution.

In many cases in other States of the Union it has been held, some of which are almost exactly like this, a suit for damages will lie. Anderson v. Canaday, 37 Okl. 171, 131 P. 697, L.R.A.1915A, 1186, Ann.Cas.1915B, 714, and cases there cited; Stark v. Bare, 39 Kan. 100, 17 P. 826, 7 Am.St.Rep. 537, and cases; O'Connor v. Walter, 37 Neb. 267, 55 N.W. 867, 23 L.R.A. 650, 40 Am.St.Rep. 486, and cases; and cases in 36 L.R.A. 582 annotating Stewart v. Thomson, 97 Ky. 575, 31 S.W. 133, 53 Am.St.Rep. 431. The cases are so numerous it is not worthwhile to undertake to list them. References to many of them may be found in the notes under Sections 141 to 151, inclusive, Vol. 22 Am.Jur., pages 108 to 116, inclusive. We have been unable to find but one state in which the rule is not recognized where the question has been presented and decided, to-wit, Georgia.

It is said: "In view of the purpose for which exemptions are allowed, the courts consistently refuse to recognize or uphold any method resorted to by a creditor which directly or indirectly attempts to evade or nullify the exemption statutes. He may not defeat the debtor's exemption right by

seizing exempt property while temporarily in another jurisdiction, by assigning his claim to persons outside the state, by bringing an action in another state * * *." 22 Am.Jur. p. 108, Sec. 8.

Again: "A device very often resorted to by creditors to defeat or evade the exemption laws of the state is to assign their claims against resident debtors to persons residing in another jurisdiction so they can be enforced there free from the exemption. The courts will not permit a creditor to thus circumvent the rights of a debtor assured to him by the laws of the state and, in a proper case, will restrain the enforcement of such assigned claim or will entertain an action by the injured debtor to recover the damages suffered by him through the loss of his exemption right." Sec. 142, 22 Am.Jur. p. 108.

It is said by the commentator in 36 L.R.A. 582 to 585, at 585, the cases sustaining the right of the debtor to maintain his action for damages suffered by the evasion of the exemption laws of their domicile, "view the subject from the point of right and justice between the debtor and creditor residing within this jurisdiction, without questioning the validity of the proceedings in the foreign state. They simply proceed on the theory that the creditor having, though legally there, enforced the payment of the demand from a fund to which the debtor is legally entitled here, the latter may recover it here in an action at law.

"Equity recognizes the rule, and reason and justice urge its further enforcement.

"If law is the perfection of reason it cannot permit the family of the indigent debtor to be deprived by circumvention of that substance of which it could not be deprived directly because of the many statutes enacted to secure it. Just law cannot deny the debtor's right to recover from the creditor that which it would not permit the creditor to obtain."

Texas has long recognized the right of a resident debtor to enjoin a resident creditor from taking such action to evade and circumvent the exemption laws of the State. Moton v. Hull, 77 Tex. 80, 13 S.W. 849, 8 L.R.A. 722; Wm. Cameron & Co. v. Abbott, Tex.Civ.App., 258 S.W. 562; and Lightfoot v. Murphy, 47 Tex.Civ.App. 112, 104 S.W. 511. In this connection we think what is said by the Supreme Court of Oklahoma in Anderson v. Canaday, 37 Okl. 171, 131 P. 697, at page 698 (1), L.R.A.1915A, 1186, Ann.Cas.1915B, 714, is well said:

"It is difficult to understand upon what theory an injunction can be granted, unless it is because the act enjoined will result in wrong, and if it does result in wrong the law should give redress. It seems illogical to say to a citizen against whom an injunction is asked, 'It is wrong for you to seize by garnishment process the wages of another citizen in a foreign state, and therefore you are enjoined from so doing,' but if he does get the money by garnishment process to say to such person whose wages were taken, "If you had applied in time, an injunction would have been issued to prevent your creditor from getting your wages, but as he has collected them he may keep them.'

"The exemption laws are intended for the protection of the family, and embody the public policy of the state on the question. It seems clear that as between her citizens the state has the right to make her exemption laws effective, and ought not to deny to one of her citizens a remedy against another of her citizens, who has brought suit in a foreign jurisdiction for the purpose of evading her exemption laws, and of depriving the party sued of the protection which the law of the state of his residence gave him."

We are of the opinion, therefore, the judgment of the trial court is without error and it is affirmed.