2009 OK CIV APP 82

**Dr. Michael PETERSON, D.C., Plaintiff/Appellant,**

v.

**Ken Ray UNDERWOOD; Ken Ray Underwood, P.C., an Oklahoma Corporation; and Charles Snider, Defendants/Appellees.**

**No. 105,984.**

Court of Civil Appeals of Oklahoma, Division No. 4.

Nov. 26, 2008.

Rehearing Denied May 8, 2009.

Certiorari Denied Sept. 22, 2009.

Walter D. Haskins, Marthanda J. Beckworth, Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, Tulsa, OK, for Plaintiff/Appellant.

Joseph R. Farris, Paula J. Quillin, Feldman, Franden, Woodard & Farris, Tulsa, OK, for Defendants/Appellees Underwood and Ken Ray Underwood, P.C.

Larry R. Steidley, Jr., Claremore, Oklahoma, For Defendant/Appellee Snider.

DOUG GABBARD II, Presiding Judge.

¶1 In this malicious prosecution action, Plaintiff, Dr. Michael Peterson, appeals a dismissal granted to Defendant, Charles Snider, and a summary judgment granted to Snider's attorney, Defendant Ken Ray Underwood and the law firm of Ken Ray Underwood, P.C.(collectively, Underwood). We affirm.[1]

## FACTS

¶2 This litigation began when Snider, a truck driver, suffered a job-related injury. He was referred by his employer, Melton Truck Lines, to Peterson, a chiropractor, for treatment. Snider alleged that Peterson negligently manipulated his spine, causing him to suffer a herniated disc that required surgery. Snider filed a workers' compensation claim that was later settled by joint petition.

¶3 Snider then hired Underwood as his attorney. In 2000, Snider sued his employer's healthcare management company, Concentra Managed Care (Concentra), and Peterson. Snider asserted six "causes of action": medical negligence, failure to obtain his informed consent, violations of the Oklahoma Consumer Protection Act, fraud, conspiracy, and intentional infliction of emotional distress. Regarding the last four claims, Snider essentially asserted that the healthcare management company and Peterson conspired to reduce or eliminate his workers' healthcare benefits by claiming that he was not disabled and had not suffered a work-related injury. Eventually, the trial court granted "partial" summary judgment to Peterson on the last four claims. Snider then dismissed the first two claims without prejudice.

¶4 Peterson filed an application to tax costs of $1,904.98, asserting he was the prevailing party. The trial court denied the application, and he appealed. In appeal # 96,846, another division of this Court reversed and remanded, holding that Peterson was the prevailing party as to the four causes of action decided by summary judgment,[2] and was not precluded from receiving costs thereon. On remand, Peterson's lawyer failed to appear at the hearing on costs and the court again denied the application. Peterson filed a motion for new trial, which the trial court granted. Snider appealed and, in appeal # 99,522, another division of this Court affirmed.

¶5 Peterson then filed the action that is the subject of the instant appeal. Peterson sued Snider and his attorney, Underwood, for malicious prosecution.[3] In an amended petition, Peterson alleged Snider's lawsuit was brought without probable cause. Peterson relied on Snider's deposition, wherein Snider stated his employer pressured him into agreeing to fraudulently report the injury as non-work-related, so that his health insurer would pay benefits. Snider also ad-

---

1. The Court commends all of the attorneys for their well-researched and ably-argued briefs.

2. The Court characterized Snider's first two claims as involving medical negligence and the latter four claims as involving his workers' compensation rights.

3. Peterson first filed his lawsuit in Cimarron County in 2002. He then re-filed the present action in Tulsa County in 2004 and dismissed the earlier suit. After Underwood asserted the Tulsa County lawsuit was time-barred, the trial court agreed and granted summary judgment. In appeal # 102,358, another division of this Court reversed, holding that under Oklahoma's savings statute, 12 O.S.2001 § 100, Peterson's amended petition was timely filed, as it had been filed within one year of the Cimarron County lawsuit's dismissal.

mitted he had no knowledge or any evidence to support many of his lawsuit's allegations:

Q. [Peterson's attorney] Okay. This alleges that Dr. Peterson made some affirmative misrepresentations to you and disclose—failed to disclose some material facts to you. Do you know of any evidence to support that?

A. No, sir.

Q. Did you ever suggest such a thing occurred?

A. No, sir.

Q. You allege in here that Dr. Peterson conspired with Concentra Managed Care to deprive you of benefits you were entitled to receive under the law. Do you know of any evidence to support that at all?

A. No, sir.

Q. Did you ever suggest to anyone that Dr. Peterson conspired with anyone to do anything to you?

A. No, sir.

Q. Did you read this petition before it was filed on your behalf?

A. Yes, sir, I did.

Q. Did you give an okay that it could be filed on your behalf?

A. Yes, sir.

Q. In spite of the fact that you knew that you didn't have any evidence at all to support these claims?

MR. UNDERWOOD: Object to the form. Go ahead and answer.

A. Yes, sir.

Q. (By Mr. Haskins) Why?

A. I trusted my attorney.

Q. You allege that Dr. Peterson engaged in some kind of conduct that was so extreme and outrageous as to go beyond all bounds of decency and would be considered atrocious and utterly intolerable to a civilized society. What's that?

A. I don't know.

Q. Know of anything to support that?

A. No, sir.

Q. You allege that Dr. Peterson somehow caused you severe emotional distress beyond that which a reasonable person would be expected to endure. Do you know of anything to support that?

A. No, sir.

Q. You allege in here Dr. Peterson somehow had a conflict of interest in treating you. Do you know of anything to support that?

MR. UNDERWOOD: You need to answer the best of your knowledge.

A. The best of my knowledge. I don't know of anything.

Q. (By Mr. Haskins) All right. You allege here that he had some goal to eliminate costs arising from workplace injuries by reducing medical care—quality of medical care and employee benefits. Do you know of anything to support that?

A. No, sir.

Q. Then you allege that Dr. Peterson's guilty of fraud and deceit. Do you know of any fraud or deceit that he engaged in?

A. No, sir.

Q. In terms of fraud and deceit, according to your testimony, there's only two people who are guilty of that and that is yourself and Melton Truck Lines, correct?

MR. UNDERWOOD: Object to the form.

THE WITNESS: Go ahead and answer?

MR. UNDERWOOD: Yeah, you can go ahead and answer.

A. Yes.

¶ 6 Snider filed a motion for summary judgment relying upon two grounds: (1) that Peterson's suit was barred by a Discharge of Debtor that Snider had received in bankruptcy court, and (2) that he had probable cause for filing his lawsuit. Peterson responded that: (1) the bankruptcy court's Discharge of Debtor did not apply to intentional torts, such as malicious prosecution, and (2) there was a disputed fact question as to whether Snider had probable cause to file his suit.

¶ 7 Underwood also filed a motion for summary judgment, asserting that even if Snider's performance at his deposition was "dismal," there was a legitimate basis for the lawsuit since there was evidence Peterson had prepared a report of his examination of Snider and sent to a claims adjuster without Snider's permission or knowledge.

¶ 8 The trial court dismissed the lawsuit against Snider due to his bankruptcy discharge, and granted summary judgment to Underwood. Peterson appeals.

## STANDARD OF REVIEW

■ ¶ 9 We treat the trial court's dismissal of the suit against Snider as a summary judgment for review purposes.[4] Summary judgment may be granted when there is no substantial controversy as to any material fact, and where reasonable persons could not reach different conclusions from the facts. Rule 13(a), Rules for District Courts, 12 O.S. Supp.2007, Ch.2, App.; *Indiana Nat'l Bank v. Dep't of Human Servs.*, 1993 OK 101, ¶ 10, 857 P.2d 53, 59–60. We review a grant of summary judgment *de novo*. *Young v. Macy*, 2001 OK 4, ¶ 9, 21 P.3d 44, 47. In a *de novo* review, an appellate court has plenary, independent, and non-deferential authority to determine whether the trial court erred in its legal rulings. *Id.*

## ANALYSIS

1. *The dismissal in favor of Snider*

■ ¶ 10 The trial court dismissed all claims against Snider because it concluded the claims "have been discharged in bankruptcy." Indisputably, Snider received a Discharge of Debtor from the bankruptcy court on May 27, 2004. However, 11 U.S.C. § 523(a)(6) (OCIS 2008) states that a bankruptcy discharge does not discharge debts arising from a "willful and malicious injury" by the debtor. "Because both intentional conduct and malice must be shown to prevail in a malicious prosecution lawsuit, a debt arising out of malicious prosecution is nondischargeable" under the statute. *In re Ritzinger*, 286 B.R. 410, 411 (Bankr.N.D.Cal. 2002); *see also In re Caldwell*, 60 B.R. 214, 217 (Bankr.E.D.Tenn.1986). Nevertheless, when the facts are insufficient to establish the tort of malicious prosecution, a dismissal based on a bankruptcy discharge is warrant-

ed. *See In re Howes*, 246 B.R. 280 (Bankr. W.D.Ky.2000). Thus, whether the trial court properly granted a dismissal based upon the bankruptcy discharge depends upon whether there were undisputed facts which demonstrated, as a matter of law, that Peterson could not prove that Snider committed the tort of malicious prosecution.

■ ¶ 11 Malicious prosecution has been defined as a suit for damages brought by one against whom a criminal prosecution, civil suit, or other legal proceeding has been instituted maliciously and without probable cause, after termination of the former proceeding in his favor. 52 Am.Jur.2d *Malicious Prosecution* § 1 (2007). Such actions are not favored by the court, and the fact that a former action has been terminated in the plaintiff's favor is not enough to prove a malicious prosecution. *Young v. First State Bank, Watonga*, 1981 OK 53, ¶ 5, 628 P.2d 707, 709.

■ ¶ 12 To prevail in such an action, the plaintiff has the burden of proving five elements: (1) the defendant's institution of the former action; (2) its termination in the plaintiff's favor; (3) the defendant's want of probable cause for pressing the former suit against the plaintiff; (4) the presence of malice in the defendant's conduct; and (5) damages. *Reeves v. Agee*, 1989 OK 25, ¶ 12, 769 P.2d 745, 752. Evidence of lack of probable cause may furnish proof of malice, but malice does not establish want of probable cause in such an action. *Gray v. Abboud*, 1939 OK 73, ¶ 4, 184 Okla. 331, 87 P.2d 144, 146.

■ ¶ 13 Here, the record contains proof of elements (1) and (5). The record also contains proof of element (2), since four of the six claims were terminated in Peterson's favor by summary judgment.[5] Even though all six claims were not terminated in his favor, "[i]f a claim is terminated in favor of the malicious-prosecution plaintiff, an action for malicious prosecution will lie on that

---

4. In his motion for summary judgment, Snider asserted that Peterson's lawsuit should be dismissed due to his bankruptcy discharge. This assertion raised the defense of failure to state a claim upon which relief can be granted. When a defendant raises such a defense by motion, a trial court is required to treat the motion as one for summary judgment. 12 O.S. Supp.2007 § 2012(B).

5. We note that the first two claims do not constitute a final termination for purposes of malicious prosecution since a dismissal without prejudice does not reach the substantive rights of the action. *Glasgow v. Fox*, 1988 OK 71, 757 P.2d 836.

singular claim, regardless of who prevails on other claims pressed in the same suit." *Greenberg v. Wolfberg,* 1994 OK 147, ¶ 19, 890 P.2d 895, 904.

■■■ ¶ 14 Peterson also asserts that the record contains proof of elements (3) and (4), the want of probable cause and malice. Peterson asserts that these elements were established in Snider's lawsuit when the trial court found no facts existed to support the four claims. Based upon this finding, he argues that Snider and Underwood are collaterally estopped [6] from asserting otherwise. We disagree.

¶ 15 In granting the earlier summary judgment, the trial court determined that the undisputed facts entitled Peterson to summary judgment as a matter of law. The trial court's statement that there were no facts before the court to support Snider's claims was essentially a finding that his claims had no *legal cause.*[7]

■■■ ¶ 16 *Probable cause* for filing a lawsuit does not mean the same thing as legal cause. "If it did, every plaintiff who failed to recover in his lawsuit could be liable to an action for malicious prosecution." *Lewis v. Crystal Gas Co.,* 1975 OK 26, ¶ 14, 532 P.2d 431, 433. Instead, "probable cause" is present if the facts and circumstances known to the defendant were such as to justify a person of prudence and caution to reasonably believe that the action of filing suit against the plaintiff was justified, either at common law or under an existing statute. *Mo., Kan. & Okla. Coach Lines v. Meister,* 1958 OK 227, ¶ 5, 330 P.2d 579, 582; *Greenberg v. Wolfberg,* 1994 OK 147, n. 29, 890 P.2d 895, 903.

■■■ ¶ 17 In his deposition, Snider admitted having no personal knowledge sufficient to file the four claims. However, he testified that he told his attorney what had happened, and that he "trusted" his attorney to determine whether the suit should be filed. Where a defendant has communicated all the facts bearing on a case within his knowledge to a competent attorney, and has acted honestly and in good faith upon the advice given, then the absence of malice is established, the want of probable cause is negatived, and the defendant is exonerated from all liability for malicious prosecution. *See Roby v. Smith,* 1914 OK 30, 138 P. 141; *Thelma Oil & Gas Co. v. Sinclair Gulf Oil Co.,* 1924 OK 50, 97 Okla. 5, 222 P. 686; *Meister,* and *Lewis.* Good faith in seeking the advice of counsel may be negated by showing that such advice was not honestly sought or a full and fair disclosure was not made. *Greenberg,* n. 30.

¶ 18 Although he had insufficient personal knowledge to support the filing of his petition, Snider told his attorney what he knew and then "trusted" and relied upon the advice of his counsel. The record contains no evidence suggesting that Snider failed to disclose any material fact, or that he did not honestly seek his attorney's advice.

¶ 19 Furthermore, Snider had no affirmative duty to investigate the facts before he authorized the filing of the petition. The Oklahoma Supreme Court settled that question in *Williams v. Frey,* 1938 OK 280, 182 Okla. 556, 78 P.2d 1052. There, Williams complained to the Sheriff and County Attorney that Frey had stolen his iron kettle and some pipe. Williams alleged that Frey told him, a few weeks previously, that he intended to take the kettle, and, after it came up missing, Frey's brother told him Frey had taken the kettle. Based upon Williams' information, the County Attorney obtained a search warrant and found the kettle on Frey's property. Criminal charges were filed and then dismissed when Frey's sister, who also lived on Williams' property, stated that she had *loaned* the kettle to Frey. Frey obtained a judgment for malicious prosecution. In reversing, the Supreme Court stated that once a defendant makes full disclosure to his attorney, his reliance upon the attorney's advice is a complete defense and he has no duty to affirmatively investigate:

---

6. Collateral estoppel provides that once a court decides an issue of fact or law necessary to its judgment, that issue may not be relitigated between the same parties or their privies in a future lawsuit. *Benham v. Plotner,* 1990 OK 64, ¶ 5, 795 P.2d 510, 512.

7. If the trial court's comments suggest more, *i.e.,* that there were no facts supporting probable cause for filing, then they must be viewed as dicta.

It is suggested that the defendant did not do all within his power to discover the facts; that he should have inquired of the plaintiff's sister whether she had given him permission to take the articles ... [T]he doctrine announced in *Roby v. Smith,* 40 Okla. 280, 138 P. 141, which has since been followed, [states] as follows:

...

Where the defendant relies upon advice of counsel as a defense, *the disclosure to counsel required of him before acting upon such advice is not a disclosure of all the facts discoverable, but all the facts within his knowledge.* If he knows facts enough, either personally or by credible information, which, when fairly and fully stated to reputable counsel for the purpose of obtaining legal guidance, results in advice which is honestly followed in commencing the criminal proceeding, that is sufficient.

*Id.* at ¶ 17, 78 P.2d at 1056. This rule was subsequently followed in *Lewis v. Crystal Gas.*

¶ 20 Snider's reliance upon the advice of his attorney is undisputed and is a complete defense to the claim of malicious prosecution. He had no duty to investigate whether Underwood had sufficient probable cause to file suit on his behalf. He is entitled to the defense even if his attorney gave bad advice amounting to an error of law or negligence. *See Page v. Rose,* 1975 OK 176, 546 P.2d 617. Accordingly, we find the trial court properly granted a dismissal based upon the bankruptcy discharge.

### 2. *The summary judgment in favor of Underwood*

¶ 21 There is no rule which gives lawyers absolute immunity from liability for malicious prosecution. *Reeves v. Agee,* 1989 OK 25, ¶ 21, 769 P.2d 745, 755. However, an attorney who files a lawsuit on behalf of a client is not liable unless the elements of malicious prosecution, including malice and want of probable cause, are established. 52 Am.Jur.2d *Malicious Prosecution* §§ 92–94 (2000). Moreover, just as a client may rely

in good faith on the advice of a lawyer, a lawyer is entitled to rely in good faith on the statement of facts made by the client. Debra E. Wax, *Liability of Attorney, Acting for Client, for Malicious Prosecution,* 46 A.L.R.4th 249, 254 (1986).

¶ 22 Here, Underwood asserted that he was entitled to summary judgment because he had probable cause to file each claim. He asserts that the claim that Peterson violated the Oklahoma Consumer Protection Act is supported by evidence indicating that Peterson was a Concentra referral doctor, that Consolidated Benefits Resources (CBR) was a Concentra entity, that CBR handled Melton Truck Lines' workers' compensation claims, and, therefore, Peterson, Concentra and CBR had a conflict of interest in treating Snider which they failed to disclose and which constituted a deceptive trade practice in violation of the Act. He asserts that the fraud claim was supported by Peterson's written report and CBR notes which failed to disclose that Peterson had injured Snider and did not fully disclose the extent of Snider's injuries.[8] He asserts that Peterson's written report, which did not clearly indicate that Snider had a herniated disk and even concluded that Snider was not disabled, together with correspondence by a CBR agent, suggested a conspiracy to dissuade Snider from filing for worker's compensation benefits. After carefully reviewing the extensive evidentiary material, we conclude that Underwood had probable cause for each claim.

¶ 23 However, even if he had no probable cause, Underwood was entitled to summary judgment because he had an absence of malice. In *Anderson v. Canaday,* 1913 OK 209, 37 Okla. 171, 131 P. 697, the Oklahoma Supreme Court stated:

An attorney is not ordinarily liable for the acts of his client. The fact that through ignorance he gives his client bad advice, on which he acts to the hurt of another, will not make the attorney liable to that other. But where the attorney is actuated by malicious motives or shares the illegal mo-

---

8. Underwood based his claim that Peterson aggravated Snider's work injury on the reports of two orthopedic specialists and a board certified chiropractor.

tives of his client he becomes responsible. In the case of *Burnap v. Marsh*, 13 Ill. 535, Mr. Justice Caton said:

> It is not denied that, in order to render the attorneys liable for suing out a writ and causing the plaintiff to be arrested thereon, something more must be shown than would be required, were the action brought against the party in whose behalf the writ was sued out. The rule by which attorneys may be held liable for malicious prosecutions is clearly laid down by Tindal, C.J. in *Stockley v. Harnidge*, 34 Eng. C.L.R. 276. It was there held that if the attorneys who commenced the suit alleged to be malicious knew that there was no cause of action, and knowing this "dishonesty and with some sinister view, for some purpose of their own, or for some other ill purpose which the law calls malicious, caused the plaintiff to be arrested and imprisoned," they were liable. To protect attorneys beyond this would be authorizing those who are the most capable of mischief to commit the grossest wrong and oppression. It is true that when the attorney acts in good faith in prosecuting a claim which his client believes to be just, and is actuated only by motives of fidelity to his trust, he ought not to be held liable, although he may have entertained a different opinion as to the justice or legality of the claims. When the client will assume to dictate a prosecution upon his own responsibility, the attorney may well be justified in representing him, so long as he believes his client to be asserting what he supposes are his rights, and is not making use of him to justify his malice.

*Id.* at ¶ 8, 131 P. 697, 699–700.

¶ 24 Thus, an attorney who files an unsuccessful suit is not liable for malicious prosecution, as long as the attorney honestly believed he or she had probable cause to file the claim, or filed the claim without any dishonest or sinister purpose. Mere negligence or incompetence does not satisfy the requirement of motive, malice, and intent to injure necessary to prove the intentional tort of malicious prosecution.

¶ 25 Here, Underwood advanced extensive facts and legal arguments in support of his assertion that he had probable cause to file the four claims in question. An attorney's ability to set forth specific facts and legal arguments in support of a claim is evidence of good faith and lack of malice. Although Peterson argued the merits of each claim, he failed to present any evidence that Underwood had malice, *i.e.*, an improper motive in filing suit, the lack of an honest belief that his suit had merit, or actual knowledge that he had no probable cause to file. Malice on the part of an attorney may not be presumed. Accordingly, the trial court properly granted summary judgment to Underwood.

## CONCLUSION

¶ 26 The trial court's grant of summary judgment in favor of Snider, Underwood, and Underwood's law firm is affirmed.

¶ 27 AFFIRMED.

RAPP, C.J., and BARNES, J., concur.