**Kay Eloise ROBINSON; Eva May Robinson; Harry Robinson; and George Samuel Robinson, Plaintiffs-Appellants,**

v.

**AUDI NSU AUTO UNION AKTIENGESELLSCHAFT and Volkswagen of America, Inc., Defendants-Appellees.**

Nos. 82–1480, 82–1495 to 82–1497.

United States Court of Appeals, Tenth Circuit.

July 19, 1984.

Jefferson G. Greer, Greer & Greer, Tulsa, Okl. (Norman Gilder, Greer & Greer, Tulsa, Okl., with him on brief), for plaintiffs-appellants.

Bert M. Jones, Rhodes, Hieronymus, Jones, Tucker & Gable, Tulsa, Okl. (Richard M. Eldridge and R.P. Redemann, Rhodes, Hieronymus, Jones, Tucker & Gable, Tulsa, Okl. and Myron Shapiro, Herzfeld & Rubin, P.C., New York City, with him on the brief), for defendants-appellees.

Before BARRETT, DOYLE and McKAY, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

The appeal before us involves a products liability action, in which the plaintiffs-appellants, all members of the Robinson family, sued the defendants, the manufacturer, the importer, the distributor and the retailer of their Audi automobile, for damages arising out of a rear-end collision. They were struck by a car that was moving at an estimated ninety miles per hour, whereas their car was only moving an estimated fifty-five miles per hour. This all happened on an Oklahoma highway when their car was struck by a Ford Torino which was not only being driven at a high speed, but also by a drunk driver who was not a party to the action. The impact of the crash, in view of the speed of the driver of the Torino, was severe, and the rear end of the car was crushed up to twenty-four inches, and the car doors were wedged shut. The impact also punctured the fuel tank, a so-called "drop-in" type, which was so placed in the back of the car so that it could serve as the floor of the trunk of the car. The

car burst into flames and plaintiffs were severely burned.

Plaintiffs brought an action which alleged that the Audi was defective and unreasonably dangerous because the gas tank as placed was easily punctured by the contents of the trunk when impacted from behind.

The United States Supreme Court released the distributor and retailer for lack of personal jurisdiction. *See World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The remaining defendants, Volkswagen of America (the importer) and the Audi Company (the manufacturer), the appellees herein, removed the action to the United States District Court for the Northern District of Oklahoma. This was based on diversity of citizenship.

The matter was tried to a jury, which entered a verdict for the defendants. Plaintiffs moved for a new trial, and the court denied the motion. Thereupon, plaintiffs appealed.

A number of errors are set forth in the briefs and they are relied on for reversal. We will describe the errors in connection with the discussion which follows.

The first question is whether the defendants were guilty of discovery abuses as alleged that so prejudiced the plaintiffs as to deprive them of a fair trial.

The allegation is that there were a number of abuses of the discovery process. The contention of the plaintiffs is that the defendants ignored the two pretrial orders requiring them to present their expert witness, Derwyn Severy, for deposition by plaintiffs even though the expert was available to be deposed. Plaintiffs did not depose Severy until twelve days into the trial, after the plaintiffs had completed their case-in-chief. Thus plaintiffs were unable to take defendants' theory of the case into account when presenting their case-in-chief. Furthermore, plaintiffs allege that defendants failed to exchange exhibits with plaintiffs' counsel before they were offered. This allegedly deprived plaintiffs of an opportunity to develop objections or rebuttal testimony. According to plaintiffs defend-

ants' pattern of deception violated the clear purposes of the federal discovery rules to facilitate fact finding and prevent unfair surprise. Fed.R.Civ.P. 26 and Advisory Comm. Notes; *Hickman v. Taylor,* 329 U.S. 495, 507, 67 S.Ct. 385, 391, 91 L.Ed. 451 (1947). Plaintiffs note that even the trial court commented on the defendants' behavior. Plaintiffs claim that because of the defendants' "willful failure" to obey the discovery rules, certain evidence should have been excluded and sanctions should have been imposed under Fed.R.Civ.P. 37(d).

The response of the defendants is that the plaintiffs are estopped from claiming unfair surprise because they failed to avail themselves of the opportunity to adequately prepare for trial, and because plaintiffs themselves were guilty of discovery abuses. Moreover, defendants contend, the plaintiffs were not prejudiced by any of the alleged actions, because the trial court excluded some of the challenged evidence, and gave plaintiffs extra time to review and evaluate the challenged evidence actually admitted.

The imposition of sanctions for abuse of discovery under Federal Rule of Civil Procedure 37 is a matter within the discretion of the trial court. *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976); *Brennan v. Sine,* 495 F.2d 875, 877 (10th Cir.1974). Decisions on evidentiary matter are also within the trial court's discretion. *Durflinger v. Artiles,* 727 F.2d 888, 890 (10th Cir.1984); *Mason v. United States,* 719 F.2d 1485, 1490 (10th Cir.1983).

We are unable to evaluate the accusations that the parties hurl at each other in connection with the respective discovery practices. However, enough has been presented to indicate it was error to allow the defendants to postpone the presentation of the expert witness until a time long after the trial started. The trial court made an effort to tailor its orders to the individual instances of alleged discovery abuse, and also attempted to make the trial

**1484**

fair in light of the circumstances. We cannot rule that it was reversible error to allow the trial court to refuse to exclude evidence or order sanctions.

The next question which we consider is whether the trial court erroneously admitted into evidence a film or film which depicted rear-end collisions of vehicles and erroneously allowed one of the defendants' experts to testify with reference to the film.

Plaintiffs objected to the introduction into evidence of the film "Cars That Crash and Burn," which depicted a series of rear-end collisions between various different makes of 1973 automobiles. The film, which was prepared by the Insurance Institute for Highway Safety, was originally listed by plaintiffs as an exhibit in their case-in-chief. Defendants objected to the introduction of the film, primarily because they claimed the sound track was prejudicial, and filed a motion *in limine* to exclude the film. The plaintiffs agreed not to use the film. Defendants thereafter offered the film into evidence over plaintiffs' objections.

Plaintiffs contend that the film is inadmissible because it depicts collisions of 1973 automobiles which were dissimilar from the 1976 Audi involved in this case, and because the conditions under which the filmed collisions occurred do not reflect the conditions surrounding the plaintiffs' accident. Because the filmed collisions do not accurately reflect the conditions existing at the time of the accident in question, plaintiffs therefore claim it was prejudicial error to admit the film into evidence. Plaintiffs also maintain that the defendants' expert, Derwyn Severy, should not have been permitted to refer to the inadmissible film in testimony.

The response is that the film was not offered for the purpose of recreating the actual collision in which plaintiffs were injured, but instead was offered to illustrate the complex laws of physics and mechanical principles inherent in rear-end collisions.

■ This court has had occasion to take up the present issue in prior cases. *See, e.g., Brandt v. French*, 638 F.2d 209 (10th Cir.1981); *Sanchez v. Denver & Rio Grande W.R.R. Co.*, 538 F.2d 304 (10th Cir.1976), *cert. denied*, 429 U.S. 1042, 97 S.Ct. 742, 50 L.Ed.2d 754 (1977). The principles which guide the admissibility of filmed experiments or demonstrations have been addressed by this court as follows:

> Admissions of evidence of experiments must be established by showing background proof that the experiments were conducted under conditions that were at least similar to those which existed at the time of the accident. Demonstrations of experiments used to merely illustrate the principles in forming an expert opinion do not require strict adherence to the facts. It is important in that situation, however, that it be made clear to the jury that even though there is not similarity to the events of the accident that the information is received on a theoretical basis for the limited purpose for which it is offered. Where photographs, films and slides are used to demonstrate the experiment, care must be used to point out that they are representative only of what the witness is seeking to establish and they must not be misleading in and of themselves.

*Brandt v. French*, 638 F.2d at 212 (citations omitted). The purpose of this rule is to prevent confusion of the jury. *Jackson v. Fletcher*, 647 F.2d 1020, 1027 (10th Cir. 1981). Accordingly, when experiments do not simulate the actual events at issue, the jury should be instructed that the evidence is admitted for a limited purpose or purposes. *Brandt v. French*, 638 F.2d at 212.

■ We turn now to the actual film "Cars That Crash and Burn." It is clear from the trial transcript that defendants never claimed that the film recreated the circumstances of the plaintiffs' accident. Defendants used the filmed collisions to show the effects of rear-end impact on various kinds of automobile gas tank configurations. The expert, Derwyn Severy, explained the damage sustained in each test-crash, and explained the principles which cause cars to ignite and burn. It may well be that the reception of the films was a valid exercise of discretion on the

part of the trial court. It should be observed, however, that when a trial court is dealing with this kind of evidence, involving as it does completely different transactions, it is essential that the jury be carefully instructed as to the extent to which they can use and consider films of this kind. Thus they would have to tend to prove some particular or special issue in the case, and they should be limited to that which is entirely relevant to the matter being tried. In this case the trial court failed to instruct the jury as to the limited use of the film in the case. The judge did limit the testimony of Mr. Severy, but this is an inadequate substitute for a limiting instruction.

In some circumstances, the failure to instruct the jury as to the limited purpose for which the evidence is offered is prejudicial and requires reversal. It should be noted, however, that plaintiffs in this case did not request a limiting instruction. Thus they waived any objection to the absence of such an instruction. Fed.R.Evid. 102; *see also Staniewicz v. Beecham, Inc.*, 687 F.2d 526, 531 (1st Cir.1982).

Furthermore, plaintiffs suffered no prejudice. Derwyn Severy's testimony made clear that the collisions were different from the one at issue here, in that he identified the various vehicles and the year of their manufacture, the result of which was to dispel any idea that the filmed collisions involved a 1976 Audi. Furthermore, he described the gas tank placement in each filmed car and explained why they might burn when impacted from behind. This testimony of Severy did shed some light on the transactions. Plaintiffs originally intended to use the film, and decided to forego its use after defendants filed a motion *in limine.*

Accordingly, this matter should not be the basis for reversal. The film illustrated some relevant principles. It did not purport to recreate the accident at issue, including certain particulars of plaintiffs' accident. The trial court should have instructed the jury on the limited purpose of the film and the reason that the failure to do so does not constitute reversible error is that other evidence which was provided served to limit its use. The only thing we can say is that it is not apparent that there was any prejudice suffered by the plaintiffs as a result of the acceptance of these foreign transactions.

■ The next question is whether the trial court erred in permitting defendants to introduce evidence with respect to the "state-of-the-art" in fuel tank design.

The plaintiffs complain about the trial court's receipt into evidence of the "state-of-the art" in automobile gas tank design. Their argument is that because strict products liability permits recovery when a defect makes a product unreasonably dangerous, considerations of customary designs, which address the defendants' conduct, are largely irrelevant to the strict liability inquiry. According to plaintiffs, the state-of-the-art evidence is therefore inadmissible unless it is necessary to establish the feasibility of alternative designs. Plaintiffs maintain that there was ample evidence of other design considerations and feasibility, so that the admission of the practice of the industry was erroneous and tended to confuse the jury.

The defendants respond that evidence of the custom and practice of the industry is relevant in a strict products liability case to the determination of the expectations of the consumer and therefore help to establish whether the product was "defective" and "unreasonably dangerous."

In the case at bar, plaintiffs cannot complain about the defendants' use of evidence showing alternative gas tank designs. In their case-in-chief, plaintiffs, through their expert Mr. Pautsch, introduced numerous exhibits depicting alternative fuel tank designs in use on other cars. Plaintiffs themselves asserted that these exhibits were admissible because they clearly showed the state-of-the-art at the time. If the plaintiffs utilized such evidence of the state-of-the-art, they probably opened the door to the use of such evidence by the defendants, and the introduction of similar exhibits. *Cf., Cantu v. John Deere Co.*, 603 P.2d 839 (Wash.App.1979) ("in a case where plaintiff with his evidence makes state-of-the-art an

issue, the defendant is entitled to respond").

This circuit has made it clear that although of limited use in products liability actions, state-of-the-art evidence may be admitted for certain purposes. In *Bruce v. Martin-Marietta Corp.*, 544 F.2d 442, 447 (10th Cir.1976), we held that in product liability actions, "the plaintiff must show that the product was dangerous beyond the expectation of the ordinary customer. State-of-the-art evidence helps to determine the expectation of the ordinary consumer." In the case of *Smith v. Minster Machine Co.*, 669 F.2d 628 (10th Cir.1982), this court ruled that although compliance with the custom or practice of an industry is not an absolute defense to a strict liability action, the state-of-the-art employed by the industry is relevant in determining the feasibility of other alternatives. *Id.* at 633–34. Just as plaintiff could use state-of-the-art evidence to try to show the feasibility of other safer alternatives, defendant could use state-of-the-art evidence to attempt to establish the expectations of a reasonable consumer.

We now come to the question of whether the trial court's instructions to the jury were erroneous. Plaintiffs have argued that the trial court's instructions to the jury were erroneous in that they confused strict liability and negligence concepts. Plaintiffs maintain that the instructions given by the trial court were confusing in that they set forth seemingly contradictory standards by which to judge whether the product was "unreasonably dangerous." Plaintiffs claim that the trial court erroneously focused on the manufacturer's conduct and duty, rather than on the product itself. Plaintiffs contend that the alleged confusion of negligence and strict liability concepts and inconsistencies between the various instructions makes it reasonably certain that the jury was confused and rendered a verdict which does not conform to the law.

In reviewing the instructions, this court must "consider all that the jury heard and, from the standpoint of the jury, decide 'not whether the charge was faultless in

every particular, but whether the jury was misled in any way and whether it had understanding of the issues and its duty to determine these issues.'" *Durflinger v. Artiles*, 727 F.2d 888, 895 (1984), *quoting Alloy Int'l. Co. v. Hoover-NSK Bearing Co.*, 635 F.2d 1222, 1226–27 (7th Cir.1980). Stated differently, we must look at the jury instructions as a whole to determine whether, taken together, they properly state the law governing the case. In view of the fact that the instructions were lengthy and inclusive, this does not provide a basis in and of itself for reversal.

The next issue which we consider is whether the trial court committed error in excluding plaintiffs' exhibits which purported to embody admissions by the defendants that the fuel tank design at issue was dangerous.

Plaintiffs maintain that Volkswagen of America, Audi's agent in the United States, knew in 1967 of the danger of the gas tank placement in the Audi model in question. Plaintiffs attempted at trial to introduce into evidence documents submitted by Volkswagen of America in response to safety rules proposed by the National Highway Traffic Safety Administration (NHTSA). The proffered exhibits, which were refused, comprise responses to proposed rules made between 1967 and April 1974, and reveal that the defendant Volkswagen of America knew in 1967 that the gas tank system eventually used in the 1976 Audi contained an inherent risk of combustion when impacted from behind. Plaintiffs argue that because Volkswagen of America had this knowledge and later served as Audi's agent, this knowledge can also be imputed to Audi as principal. Plaintiffs claim that the evidence is highly probative as an admission of a party opponent under Federal Rule of Evidence 801(d)(2). Thus, plaintiffs maintain that it was error for the trial judge to exclude the evidence.

Defendants claim that the proffered exhibits were documents submitted by Volkswagen of America in its capacity as agent for Volkswagenwerk Aktiengesellschaft, a

German company not a party to this action. Thus, defendants maintain that the documents are not admissions by Volkswagen of America. Moreover, because Volkswagen of America was not the agent of Audi until 1974, the alleged admissions in pre-1974 documents cannot bind Audi. The defendants also contend that the exhibits do not qualify as admissions of a party opponent because they are not inconsistent with defendants' position at trial. Defendants argue that the tendered exhibits are inadmissible hearsay not admissions by either defendant. They further state that the exclusion of the evidence is not reversible error because the question of prior knowledge, for which the evidence was offered to prove, is only relevant to punitive damages. Plaintiffs cannot get punitive damages, the argument goes, because they recovered no actual damages.

The trial court excluded the tendered evidence on several grounds. First it found that the statements did not constitute admissions. Second, it found that the statements were not attributable to Audi. Third, that the trial court held that the statements were not relevant to the cause of action against Volkswagen of America. We disagree with the ruling of the trial court, particularly in view of the present state of the facts.

■ First, are the statements attributable to Audi? We reviewed the record in this case and we agree with the trial court that the statements made by Volkswagen of America are not attributable to Audi. It is clear from the face of the documents that the response to NHTSA proposed rules were made by Volkswagen of America on behalf of Volkswagenwerk Aktiengesellschaft, the German manufacturer of Volkswagen automobiles. The documents submitted at various times between 1967 and 1974 do not purport to represent responses by Audi. Indeed, the agency relationship between Volkswagen of America and Audi did not arise until July, 1974, several months after Volkswagen of America's submission of the last document on behalf of the German Volkswagen manufacturer.

If these documents constitute admissions under Federal Rules of Evidence 801(d)(2), they are not admissions by Audi. Plaintiff's counsel even conceded this at one point during the trial. Rule 801(d)(2)(C) provides that an admission is admissible against a party-opponent if it is "a statement by his agent * * * concerning a matter within the scope of his agency * * * made during the existence of the relationship." The agency relationship between Audi and Volkswagen of America did not exist when the statements were made by Volkswagen of America. Because the statements were not made "during the existence of the relationship," Volkswagen's statements are not admissible against Audi as admissions by a party opponent. As to Audi, the statements are inadmissible hearsay and were properly excluded below.

■ The next question is whether the statements are attributable to Volkswagen of America. It is equally clear that the statements are attributable to defendant Volkswagen of America. The responses to the NHTSA were submitted by Volkswagen of America. Nowhere did Volkswagen of America state that it submitted the statements only as an agent on behalf of Volkswagen Aktiengesellschaft. Thus, if the statements constitute relevant admissions, and we hold that they do, they are admissible under Federal Rule of Evidence 801(d)(2)(A), as the statements of a party "in either his individual or a representative capacity."

The next question is whether the statements made by Volkswagen of America should have been admitted into evidence. The trial court below held that the statements made by Volkswagen of America were not admissions, and that Volkswagen's knowledge of the defect was not relevant to the cause of action against Volkswagen of America, because Volkswagen of America merely sold and did not design the Audi in question. We disagree with this analysis.

That Volkswagen of America did not design or manufacture the allegedly defective product is not consequential in a product

liability suit in Oklahoma. In *Kirkland v. General Motors Corp.*, 521 P.2d 1353 (Okla.1974), the Oklahoma Supreme Court recognized a cause of action for "manufacturer's products liability" and adopted the standards set forth in Restatement (Second) of Torts § 402A to govern the tort. To succeed in a manufacturer's products liability action, a plaintiff must prove that the product was the cause of the injury; that a defect existed in the product at the time it left the control of the manufacturer, and that the defect made the product unreasonably dangerous to an extent beyond that which would be contemplated by the ordinary consumer. *Stuckey v. Young Exploration Co.*, 586 P.2d 726, 730 (Okla. 1978); *Kirkland,* 521 P.2d at 1363.

Under Oklahoma law, "manufacturer" for liability purposes includes "processors, assemblers, and all other persons who are similarly situated in processing and distribution." *Kirkland,* 521 P.2d at 1361. Also, the Restatement subjects to liability "any manufacturer of such a product * * * [and] any wholesale or retail dealer or distributor." Restatement (Second) of Torts § 402A comment f. Thus, the seller of a product stands in the same shoes as the manufacturer in an Oklahoma products liability action and is subject to admission of the same evidence regarding alleged defects and the resultant unreasonable danger. Thus, to the extent that knowledge of a defect is relevant at all to the cause of action, it is relevant in a product liability case against an importing distributor. The trial court's holding that Volkswagen of America's knowledge of the alleged defect was irrelevant to the cause of action against Volkswagen of America because it did not actually manufacture the Audi was therefore erroneous.

The plaintiff in an Oklahoma products liability suit need not prove that the seller knew that a defect existed in the product when the product was sold. This court has previously held, however, that prior knowledge of a defect is "germane as to whether the product as sold was unreasonably dangerous to the user," and that evidence of such prior knowledge is admissible in a products liability action. *McGrath v. Wal-*

*lace Murray Corp.*, 496 F.2d 299, 304 (10th Cir.1974). *See also Rexrode v. American Laundry Press Co.*, 674 F.2d 826, 829 n. 9 (10th Cir.), *cert. denied,* 459 U.S. 862, 103 S.Ct. 137, 74 L.Ed.2d 117 (1982) ("evidence of the occurrence of other accidents involving substantially the same circumstances as the case at issue is admissible, pursuant to strict liability theory, to establish notice, the existence of a defect, or to refute testimony by a defense witness that a given product was designed without safety hazards"); *In re Multipiece Rims Prod. Liab. Litigation,* 545 F.Supp. 149 (W.D.Mo.1982) (NHTSA correspondence prior to accident relevant to demonstrate existence of defect).

In the present case the defendants denied that the Audi gas tank configuration was defective and unreasonably dangerous. They also specifically denied, in response to the punitive damages claim, that they had prior knowledge of the alleged defect. Accordingly, if Volkswagen of America's NHTSA submissions demonstrated prior knowledge of the risks of the gas tank placement, they would constitute cogent admissions against its interests under Federal Rule of Evidence 801(d)(2).

In a March 18, 1968 document submitted by Volkswagen of America entitled "Comments to the Federal Highway Administration on Proposals for New Motor Vehicle Standards," Volkswagen of America stated:

> Puncture resistance of the fuel tank is only important if the tank is located inside the trunk of the vehicle. Pieces of luggage or tools with sharp edges can locally penetrate the tank.

This statement is clearly at odds with Volkswagen of America's denial of any knowledge that the drop-in fuel tank configuration was particularly susceptible to puncture and fire. It is also inconsistent with defendants' experts opinions that items in the trunk would not puncture the fuel tank in a rear-end collision, and that the fuel tank in the instant accident was punctured by the Ford Torino or by fire

fighters rather than by any of the items in plaintiffs' full trunk.

The above-quoted statement from Volkswagen of America's 1968 NHTSA response was clearly an admission under Federal Rule of Evidence 801(d)(2). The prior statement was contrary to defendants' position at trial on strict liability issues of causation, defect and unreasonable danger. It also goes against defendants' denial of knowledge of any defect in the punitive damages claim. The trial court clearly erred in excluding this proffered evidence. To the extent that statements in the other NHTSA responses conflicted with defendants' assertion at trial, those submissions should have been admitted against Volkswagen of America as well.

This court recognizes that if knowledge of the dangerous propensities of the drop-in fuel tank design were relevant merely to the punitive damage claim, the exclusion of the evidence would not justify a reversal where plaintiffs did not prevail on the strict liability claim. *Fischer Constr. Co. v. Fireman's Fund Ins. Co.,* 420 F.2d 271, 277 (10th Cir.1969) ("having failed to prove actual damages, [plaintiffs] were not entitled to punitive damages under the laws of Oklahoma"). Because Volkswagen of America's statements are also admissions relevant to the strict liability claim, however, the failure to admit this most compelling evidence of prior knowledge was prejudicial to plaintiffs.

Accordingly, we must reverse the judgment based on the jury verdict as to the defendant Volkswagen of America.

We hereby order a new trial as to that defendant, in which the jury may consider Volkswagen's prior knowledge of the risks of drop-in fuel tank design, and may receive and consider the other evidence which has been referred to above.