Harry ROBINSON and Kay Robinson,
Eva May McCarthy and George
Samuel Robinson, Plaintiffs–Appellees,

v.

VOLKSWAGENWERK AG, Defendant,

Greer & Greer, Defendant–Appellee,

and Herzfeld & Rubin, P.C.,
Defendant–Appellant.

No. 90–5082.

United States Court of Appeals,
Tenth Circuit.

Aug. 1, 1991.

Herbert Rubin (and Daniel V. Gsovski, Herzfeld & Rubin, New York City, Richard M. Eldridge & John F. Tucker, Rhodes, Hieronymous, Jones, Tucker & Gable, Tulsa, Okl., with him on the brief), for defendant-appellant.

Thomas Elke, Palo Alto, Cal. (Ronald D. Mercaldo & Lucille D. Sherman, Law Offices of Ronald D. Mercaldo, Ltd., Winton D. Woods, Tucson, Ariz., Maynard I. Ungerman, Ungerman & Iola, Tulsa, Okl., with him, on the brief), for plaintiffs-appellees.

Jack Redhair (and Nancy Coomer, Chandler, Tullar, Udall & Redhair, Tucson, Ariz., with him on the brief), for defendant-appellee.

Before TACHA and BALDOCK, Circuit Judges, and KANE, District Judge.*

BALDOCK, Circuit Judge.

■ Defendant-appellant Herzfeld & Rubin, P.C. (H & R) appeals from an inter-

---

* The Honorable John L. Kane, Jr., Senior United States District Judge, United States District Court for the District of Colorado, sitting by designation.

locutory order of the district court denying a motion to dismiss and a motion for summary judgment filed by itself and defendant Volkswagenwerk AG (VWAG). *See* V R. doc. 199 (Amended Order filed Apr. 25, 1990). Normally, our jurisdiction under 28 U.S.C. § 1291 extends only to final orders. Appellant H & R correctly maintains that we have jurisdiction based on the collateral order doctrine as applied to a denial of absolute immunity. *See Nixon v. Fitzgerald,* 457 U.S. 731, 742–43, 102 S.Ct. 2690, 2697, 73 L.Ed.2d 349 (1982); *Helstoski v. Meanor,* 442 U.S. 500, 506–08, 99 S.Ct. 2445, 2448–49, 61 L.Ed.2d 30 (1979); *Abney v. United States,* 431 U.S. 651, 657–63, 97 S.Ct. 2034, 2039–42, 52 L.Ed.2d 651 (1977); *Cohen v. Beneficial Loan Corp.,* 337 U.S. 541, 546–547, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949). Appellant also urges us to exercise pendent appellate jurisdiction over several interlocutory rulings of the district court pertaining to the merits of the controversy. *See Snell v. Tunnell,* 920 F.2d 673, 676 (10th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 1622, 113 L.Ed.2d 719 (1991).

This case has a protracted history which we need not detail other than to say that the plaintiffs have been unsuccessful in obtaining relief for injuries suffered in a tragic automobile accident. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Robinson v. Volkswagen of America, Inc.,* 803 F.2d 572 (10th Cir.1986); *Robinson v. Audi NSU Auto Union Aktiengesellschaft,* 739 F.2d 1481 (10th Cir.1984). In its present incarnation, plaintiffs include claims for negligence, strict products liability, and breach of warranty. *See* I R. doc. 142 at ¶¶ 97–100 (count I). The district court has ruled that these claims will not be relitigated given the previous adverse final judgment. *See* I R. doc. 64 at 3; V R. doc. 199 at 3. Also included is a malpractice claim against plaintiffs' previous trial counsel, defendant Greer & Greer (G & G). I R. doc. 142 at ¶¶ 103–07 (count III). Plaintiffs also claim that defendant VWAG is liable for fraud in connection with H & R's answers to interrogatories and repre-

sentations at trial. I R. doc. 142 at ¶¶ 108–09 (count IV). In this same regard, plaintiffs also claim that H & R is independently liable for fraud in its litigation conduct. *Id.* at ¶¶ 101–02 (count II), 108–09 (count IV). According to plaintiffs, H & R fraudulently concealed the true relationship among VWAG and Audi NSU and Auto Union from the plaintiffs, thereby precluding the plaintiffs from using critical liability evidence against VWAG and collecting damages. G & G has crossclaimed against defendants H & R and VWAG based on the same theories.

█ H & R claims that it is absolutely immune from civil liability for damages based upon its discovery and courtroom conduct in the previous trial. The district court rejected this theory, stating that "any immunity that might attach to a private attorney's conduct does not attach to the conduct alleged in this case to be fraudulent." V R. doc. 199 at 4. Our review of the district court's legal determination on absolute immunity is *de novo.* *See Snell,* 920 F.2d at 694. Given the sparing recognition of absolute immunity by both the Supreme Court and this court, one claiming such immunity must demonstrate clear entitlement. *See Burns v. Reed,* — U.S. ——, 111 S.Ct. 1934, 1944–45, 114 L.Ed.2d 547 (1991); *Forrester v. White,* 484 U.S. 219, 230, 108 S.Ct. 538, 545, 98 L.Ed.2d 555 (1988); *Snell,* 920 F.2d at 692–93; *Rex v. Teeples,* 753 F.2d 840, 843–44 (10th Cir.), *cert. denied,* 474 U.S. 967, 106 S.Ct. 332, 88 L.Ed.2d 316 (1985); *Lerwill v. Joslin,* 712 F.2d 435, 440 (10th Cir.1983).

In resolving absolute immunity claims, the Supreme Court has taken a functional approach after considering the history of common law immunity. *See, e.g., Briscoe v. LaHue,* 460 U.S. 325, 334–35, 345, 103 S.Ct. 1108, 1115, 1120, 75 L.Ed.2d 96 (1983) (absolute immunity for witnesses). Relevant factors include the recognition of immunity at common law, the risk of vexatious litigation given the function involved, and the availability of checks other than civil litigation if absolute immunity was

recognized.[1] *Burns,* 111 S.Ct. at 1941–44; *Mitchell v. Forsyth,* 472 U.S. 511, 521–22, 105 S.Ct. 2806, 2813, 86 L.Ed.2d 411 (1985). In this case, however, the absolute immunity precedent indicates that H & R's claim of absolute immunity would not be recognized at common law; we need proceed no further. *See Tower v. Glover,* 467 U.S. 914, 922–23, 104 S.Ct. 2820, 2825–26, 81 L.Ed.2d 758 (1984); *Burns,* 111 S.Ct. at 1945 (Scalia, J., concurring in judgment in part and dissenting in part) (common law tradition of immunity is a necessary, but not sufficient, condition for absolute immunity in § 1983 actions).

Concerning suits by litigants other than an attorney's own client, the general rule is that:

> [i]f an attorney is actuated by malicious motives or shares the illegal motives of his client, he may be personally liable with the client for damage suffered by a third person as a result of the attorney's actions.

7 *Am.Jur.2d* Attorneys at Law § 235 at 275 (1980 & 1991 Supp.). *Accord Anderson v. Canaday,* 37 Okl. 171, 131 P. 697, 699–700 (1913).[2] Our research suggests that only in a narrow class of cases involving defamation claims has the Supreme Court acknowledged a common law tradition of absolute immunity for private lawyers. The Supreme Court recently discussed the concept in further defining the scope of absolute immunity for prosecutors.

Like witnesses, prosecutors and other lawyers were absolutely immune from damages liability at common law for making false or defamatory statements in judicial proceedings (at least so long as the statements were related to the proceeding), and also for eliciting false and defamatory testimony from witnesses. See, *e.g., Yaselli v. Goff,* 12 F.2d 396, 401–402 (CA2 1926), summarily aff'd, 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927); *Youmans v. Smith,* 153 N.Y. 214, 219–220, 47 N.E. 265 (1897); *Griffith v. Slinkard,* 146 Ind. 117, 122, 44 N.E. 1001, 1002 (1896); *Marsh v. Ellsworth,* 50 N.Y. 309, 312–313 (1872); *Jennings v. Paine,* 4 Wis. 358 (1855); *Hoar v. Wood,* 44 Mass. 193, 197–198 (1841). See also *King v. Skinner,* Lofft 55, 56, 98 Eng.Rep. 529, 530 (K.B.1772), where Lord Mansfield observed that "neither party, witness, counsel, Jury, or Judge can be put to answer, civilly or criminally, for words spoken in office."

*Burns,* 111 S.Ct. at 1941. *See also Briscoe,* 460 U.S. at 335, 103 S.Ct. at 1115 (citing *King v. Skinner*); *Butz v. Economou,* 438 U.S. 478, 512, 98 S.Ct. 2894, 2913, 57 L.Ed.2d 895 (1978); *Imbler,* 424 U.S. at 421–24, 96 S.Ct. at 990–92 (discussing *Yaselli* and *Griffith* ).

We have reviewed the cases cited by the Supreme Court and must conclude that while absolute immunity might be afforded government lawyers on these claims, such immunity is not available for a private law firm. The cases relied upon by the Su-

---

**1.** Employing this approach, the Supreme Court has held that a judge is absolutely immune from civil damages, unless he or she acts without a colorable claim of jurisdiction. *Stump v. Sparkman,* 435 U.S. 349, 356–57, 98 S.Ct. 1099, 1104–05, 55 L.Ed.2d 331 (1978); *Pierson v. Ray,* 386 U.S. 547, 553–55, 87 S.Ct. 1213, 1217–18, 18 L.Ed.2d 288 (1967). Acting in an administrative capacity, however, a judge does not enjoy the protection of absolute immunity. *Forrester,* 484 U.S. at 230, 108 S.Ct. at 545. Likewise, a prosecutor is absolutely immune from civil liability for activities which are "intimately associated with the judicial process" such as initiating and pursuing a criminal prosecution, but is not absolutely immune for activities which are administrative or investigative. *Imbler v. Pachtman,* 424 U.S. 409, 430–31, 96 S.Ct. 984, 995–96, 47 L.Ed.2d 128 (1976); *Harlow v. Fitzgerald,* 457 U.S. 800, 811 n. 16, 102 S.Ct. 2727, 2734 n. 16, 73

L.Ed.2d 396 (1982). Thus, a prosecutor has absolute immunity for controlling the presentation of evidence at trial and participating in a probable cause hearing, but not for providing legal advice to the police. *Burns,* 111 S.Ct. at 1944–45; *Imbler,* 424 U.S. at 430 n. 32, 96 S.Ct. at 995 n. 32.

**2.** In Oklahoma,

> [a]n attorney is not ordinarily liable for the acts of his client. The fact that through ignorance he gives his client bad advice, on which he acts to the hurt of another, will not make the attorney liable to that other. But where the attorney is actuated by malicious motives or shares the illegal objectives of his client he becomes responsible.

*Anderson,* 131 P. at 699–700.

preme Court support absolute immunity (1) for prosecutors on malicious prosecution and defamation claims and (2) for private lawyers on defamation claims.[3]

■■■ All lawyers are protected by an absolute privilege against defamation actions based upon litigation conduct in judicial proceedings. *See* 2 F. Harper, F. James & O. Gray, *The Law of Torts* § 5.22 at 191 (1986); 3 *Restatement (Second) of Torts* § 586 at 247–48 (1977); Okla.Stat. Ann. tit. 12, § 1443.1 (1980 & 1991 Cum. Supp.); *Kirschstein v. Haynes,* 788 P.2d 941, 947–48, 954 (Okla.1990) (privilege extends to claims for defamation and intentional infliction of emotional distress). The same rule does not apply to claims for malicious prosecution. While prosecuting attorneys are subject to an absolute privilege, *Yaselli,* 12 F.2d at 402–03,

> attorneys employed by private persons usually appear to come under the general principle and they are liable under the same conditions that would subject a lay-

man to liability for encouraging, without probable cause and for an improper purpose, a third person to instigate criminal proceedings against another.

1 F. Harper, F. James & O. Gray, *The Law of Torts,* § 4.3 at 414 (1986); *Restatement (Second) of the Law of Torts* § 653, comment f & illus. 6. Likewise, in prosecuting civil proceedings, if "an attorney acts without probable cause for belief in the possibility that the claim will succeed, and for an improper purpose, ... he is subject to the same liability as any other person." *Restatement (Second) of the Law of Torts* § 674, comment d; *Reeves v. Agee,* 769 P.2d 745, 755 (Okla.1989) ("We know of no rule which gives lawyers absolute immunity for malicious prosecution.") (footnote omitted).

We think that a similar rule applies in this case. While we recognize that prosecutors and government lawyers defending civil actions have been granted absolute immunity on similar claims,[4] the cases do

---

**3.** *Yaselli v. Goff* held that a prosecutor was entitled to absolute immunity on a malicious prosecution claim by an acquitted defendant. 12 F.2d at 397–398, 402–03. *See Gregoire v. Biddle,* 177 F.2d 579, 581 (2d Cir.1949) (Hand, C.J.) (following *Yaselli* on a false arrest claim against prosecutors and concluding that "it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who do try to do their duty to the constant dread of retaliation"), *cert. denied,* 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950). *Youmans v. Smith* was a libel action in which the court recognized a common law privilege associated with a list of pertinent questions prepared by a private lawyer for use in a disbarment proceeding. 153 N.Y. at 215–16, 222, 47 N.E. 265. *Griffith v. Slinkard* held that no action will lie against a prosecutor on claims of malicious prosecution and libel by a defendant indicted by a grand jury. 44 N.E. at 1001–02. *Marsh v. Ellsworth* was a libel action against a lawyer who filed an objection to discharge in a bankruptcy action; *held,* the writing containing the objection is privileged. 50 N.Y. at 309, 313. *Marsh* contains a cogent statement of the rule.

> The law is well settled that a counsel for a party conducting judicial proceedings is privileged in respect to words or writings used in the course of such proceedings reflecting injuriously upon others, when such words and writings are material and pertinent to the questions involved; and that, within such limit, the protection is complete, irrespective of the motive with which they are used; but that

such privilege does not extend to matter, having no materiality or pertinency to such questions.

*Id.* at 311–12. *Jennings v. Paine* held that a lawyer commenting upon the testimony of a witness while defending his client is not answerable in damages for slander. 4 Wis. at 375. *Hoar v. Wood* was a slander action by a witness in which the court held that words spoken in judicial proceedings by a party or counsel are not actionable if they are pertinent to the subject matter of inquiry. 44 Mass. at 193, 194–95. Finally, *King v. Skinner* involved an indictment against a justice of the peace for allegedly scandalous words spoken to a grand jury; *held,* the justice of the peace could not be held to answer either civilly or criminally "for words spoken in office." 98 Eng.Rep. at 529–30.

**4.** Of particular interest in this case is the type of immunity afforded government lawyers in connection with the false or misleading production and presentation of evidence. In *Imbler,* the prosecution had absolute immunity on claims that it "had knowingly used false testimony and suppressed material evidence." 424 U.S. at 428–29, 96 S.Ct. at 994. The Court strongly rejected the idea that absolute immunity is not available for claims of "willful suppression by a prosecutor of exculpatory information," *Imbler,* 424 U.S. at 431 n. 34, 96 S.Ct. at 995 n. 34, and it is "now [a] well-settled rule that a prosecutor cannot be held personally liable for the knowing suppression of exculpatory information." *Auriemma v. Montgomery,* 860 F.2d 273, 279 (7th Cir.1988), *cert. denied,* 492 U.S. 906, 109 S.Ct.

not support an analogous common law tradition for private lawyers. Two "client versus counsel" cases suggest that the Supreme Court will not extend absolute immunity without such a tradition. In *Ferri v. Ackerman,* 444 U.S. 193, 100 S.Ct. 402, 62 L.Ed.2d 355 (1979), the Court ruled that an appointed defense counsel in a federal criminal proceeding, like a private lawyer, does not enjoy absolute immunity from a malpractice action by his former client. *Id.* at 204–05, 100 S.Ct. at 409–10. The Court reasoned that those traditionally afforded immunity are charged with representing the public trust and should not be deterred by civil damage suits. *Id.* at 203–04, 100 S.Ct. at 408–09. In contrast, the appointed defense attorney does not have a duty to the public at large; rather, "[h]is principal responsibility is to serve the undivided interest of his client." Given the rationale of *Ferri v. Ackerman,* the Ninth Circuit overruled its precedent that public defenders are absolutely immune from suit under § 1983, and the Supreme Court affirmed. *Glover v. Tower,* 700 F.2d 556, 559 (9th Cir.1983), *aff'd,* 467 U.S. 914, 104 S.Ct. 2820, 81 L.Ed.2d 758 (1984).

In *Tower,* the Court determined that a public defender did not have absolute immunity against a § 1983 claim alleging a conspiracy to convict a defendant whom the public defender represented. 467 U.S. at 923, 104 S.Ct. at 2826. Because a public defender was unknown to the common law, the Supreme Court analogized to retained defense counsel. *Id.* at 921, 104 S.Ct. at 2825. In denying absolute immunity, the Court stated: "It is true that at common law defense counsel would have benefited from immunity for defamatory statements made in the course of judicial proceedings, ... but this immunity would not have covered a conspiracy by defense counsel and other state officials to secure the defendant's conviction." *Id.* at 922, 104 S.Ct. at 2825. Although the case before us is of the "nonclient versus counsel" variety, *Ferri* and *Tower* suggest that the scope of absolute immunity accorded a private lawyer can be no broader than that originating from common law.

Plaintiffs and G & G seek to hold H & R liable based upon allegedly fraudulent statements in the course of discovery and

3215, 106 L.Ed.2d 565 (1989). Whether the claim involves withholding evidence, failing to correct a misconception or instructing a witness to testify evasively, absolute immunity from civil damages is the rule for prosecutors. *See, e.g., Heidelberg v. Hammer,* 577 F.2d 429, 432 (7th Cir.1978); *Hilliard v. Williams,* 540 F.2d 220, 221 (6th Cir.1976). Likewise, absolute immunity also extends to allegations that government lawyers misapplied the law in civil and criminal tax matters heard by a tribunal. *Christensen v. Ward,* 916 F.2d 1462, 1474–75 (10th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 559, 112 L.Ed.2d 565 (1990). In this circuit, absolute immunity has been upheld even given allegations that a prosecutor allegedly lied and filed a false affidavit in the course of a criminal proceedings. *Martinez v. Winner,* 771 F.2d 424, 438–39, *on reh'g,* 778 F.2d 553, 555–56 (10th Cir.1985), *vacated on other grounds,* 475 U.S. 1138, 106 S.Ct. 1787, 90 L.Ed.2d 333 (1986).

Absolute immunity also has been extended to government lawyers involved in civil proceedings. Analogizing to the functions of a prosecutor, the Court in *Butz,* 438 U.S. at 517, 98 S.Ct. at 2916 held that "an agency attorney who arranges for the presentation of evidence on the record in the course of an adjudication is absolutely immune from suits based on the introduction of such evidence." In *Barrett v. United States,* 798 F.2d 565 (2d Cir.1986), the Second

Circuit determined that an assistant attorney general defending a wrongful death action was entitled to absolute immunity concerning claims that he concealed facts concerning federal involvement in the death by way of an experimental drug program. *Id.* at 569–70, 573. The federal attorneys, who did not represent the State and attempted to minimize the exposure of the federal government through concealment, were not entitled to absolute immunity because their activities were too far removed from the judicial process. *Id.* at 573. Similarly, in *Murphy v. Morris,* 849 F.2d 1101 (8th Cir.1988), an assistant attorney general defending a prisoner civil rights action was entitled to absolute immunity on claims that he introduced improperly obtained impeachment evidence at trial. *Id.* at 1105 ("The introduction of evidence in a judicial proceeding constitutes a normal and regular advocacy function...."). Absolute immunity did not attach to the act of obtaining the evidence from the prison mail system, an investigative activity. *Id.* In *Snell v. Tunnell,* we held that preparing and presenting an emergency custody application before a judge constitutes advocacy, notwithstanding the incomplete or false allegations contained therein. 920 F.2d at 694. But the state attorney in *Snell* was denied absolute immunity because she acted beyond colorable authority. *Id.* at 696.

at trial, but we cannot identify a common law precedent for absolute immunity on such claims.[5] The claims asserted are not for defamation and H & R cannot avail itself of the immunity afforded government lawyers responsible for vindicating the public interest. We must conclude that H & R is not entitled to absolute immunity for the discovery and litigation statements contained in the plaintiffs' second amended complaint.

■ Next we consider whether we should exercise pendent appellate jurisdiction over otherwise nonappealable issues. H & R urges us to consider whether Fed.R. Civ.P. 60(b) provides the exclusive remedial framework for plaintiffs, and if so, whether plaintiffs' action is barred under Rule 60(b)(3). *See generally* 7 J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 60.24[5] (1987 & 1990–91 Cum.Supp.); *In re M/V Peacock,* 809 F.2d 1403 (9th Cir.1987); *McCarty v. First of Ga. Ins. Co.,* 713 F.2d 609 (10th Cir.1983); *Villareal v. Brown Express, Inc.,* 529 F.2d 1219 (5th Cir.1976). H & R also urges us to consider whether Oklahoma would allow plaintiffs' action given the prior and adverse federal court judgment. We recently indicated that three factors inform a decision about pendent appellate jurisdiction:

(1) whether the otherwise nonappealable issue is sufficiently developed, both factually and legally, for our review, ...

(2) whether review of the appealable issue involves consideration of factors closely related or relevant to the otherwise nonappealable issue, ... and

(3) whether judicial economy will be better served by resolving the otherwise nonappealable issue, notwithstanding the federal policy against piecemeal appeals....

*Colorado v. Idarado Mining Co.,* 916 F.2d 1486, 1491 (10th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1584, 113 L.Ed.2d 648. Our analysis of these factors, if not the layout of H & R's brief-in-chief,[6] convinces us that this is a case of the pendent appellate jurisdiction tail wagging the jurisdictional dog.

■ The three nonappealable issues raised by H & R simply are not integral to the district court's decision to deny absolute immunity. *See Tri–State Generation & Transmission v. Shoshone River Power,* 874 F.2d 1346, 1353 (10th Cir.1989). Our resolution of the absolute immunity issue without mention of these issues is telling. Moreover, in light of the pending claims and crossclaims, we think that the Rule 60(b) issues may become clearer once the operative facts are determined. This will require the district court to carefully assess and characterize the evidence concerning the alleged fraudulent scheme to deprive the plaintiffs of discovery information and damages. Judicial economy will be better served by evaluating these claims on a more complete record, thus avoiding the potential for revisiting the claims in a subsequent appeal. Pendent appellate jurisdiction is a doctrine of discretion, not of right, and in our discretion we decline to consider the nonappealable claims.

The denial of absolute immunity is AFFIRMED. The remainder of the appeal is DISMISSED. All pending motions are DENIED.[7]

**5.** H & R urges reliance upon the suggestion in *Auriemma v. Montgomery,* 860 F.2d 273, that absolute immunity should extend to "advocates within the broad confines of the civil discovery procedures available in both federal and state courts." *Id.* at 278. We note that the actual holding in *Auriemma* denies absolute immunity to two government defense lawyers based on an extra-judicial investigation. *Id.* Moreover, before policy concerns may be weighed, a common law predicate for absolute immunity must exist. *Tower,* 467 U.S. at 922, 104 S.Ct. at 2825.

**6.** The first 90% of the brief is devoted to otherwise nonappealable issues.

**7.** This denial extends to H & R's request that we award it costs, expenses and attorney's fees if we decline to sanction plaintiffs' counsel for filing a belated 10th Cir.R. 27.2 motion. *See* Appellant's Motion for Costs and Expenses un-

der 28 U.S.C. § 1927 and the Inherent Powers of the Court at 2.